## Richmond

### WILLIAM BANKS V. COMMONWEALTH OF VIRGINIA.

November 24, 1976.

Record No. 760276.

Present, All the Justices.

*John E. Kieffer (Woodward, Miles & Flannagan,* on brief), for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the court.

In this criminal appeal, an habitual offender, asserting the protection of the Self-Incrimination Clauses of the State and Federal Constitutions,* attacks the applied constitutionality of Virginia's "hit and run" statute, Code § 46.1-176.

---

* Va. Const. art. I, § 8; U. S. Const. amends. V and XIV, § 1.

The record shows that in October of 1973 in Smyth County, defendant William Banks was declared an habitual offender. He was ordered not to operate a motor vehicle on the highways of this State and to surrender to the court for disposal all licenses permitting such operation. Code § 46.1-387.6. While that order was in force, defendant allegedly drove a vehicle which collided with one operated by Joyce McDaniel on May 25, 1975 in Bristol, causing slight injury to McDaniel, who was travelling alone. The Commonwealth sought to show that although defendant's vehicle was stopped about 50 feet from the point of collision, defendant did not report the accident to the police or McDaniel, nor did defendant render aid to McDaniel.

Defendant was subsequently convicted under an indictment based on Code § 46.1-176(a) which charged defendant with feloniously: failing "to report forthwith to the police authority"; failing "to report his name, address, operator's or chauffeur's license number and the registration number of his vehicle to" the injured person; and, failing "to render reasonable assistance to" the injured person. We granted a writ of error on limited grounds to the November 3, 1975 judgment of conviction, entered on the jury verdict, which sentenced defendant to jail for six months.

The dominant issue is whether a portion of Virginia's "hit and run" statute infringes the constitutional privilege against compulsory self-incrimination of one who has been adjudicated an habitual offender under Code §§ 46.1-387.1, *et seq.* We hold the enactment in question does not suffer the constitutional defect alleged.

The part of the statute under attack provides:

"§ 46.1-176. . . . (a) The driver of any vehicle involved in an accident in which a person is . . . injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic and report forthwith to the police authority; and, in addition, to the person . . . injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with . . . his name, address, operator's or chauffeur's license number and the registration number of his vehicle. The driver shall also render reasonable assistance to any person injured in such accident, including the carrying of such

injured person to a physician, surgeon or hospital for medical treatment if it is apparent that such treatment is necessary or is requested by the injured person."

Violation of the challenged portions of § 46.1-176(a) may be punished by confinement in the penitentiary or in jail, or by such confinement and a fine, or by a fine only. Code § 46.1-177.

Insofar as pertinent here, the Virginia Habitual Offender Act provides that if any person found to be an habitual offender is thereafter convicted of operating a motor vehicle in this State while the order prohibiting such operation is in effect, such person shall be punished by confinement in the penitentiary. Code § 46.1-387.8. Moreover, in any case in which the accused is charged with driving a motor vehicle while his license or permit to drive is revoked or is charged with driving without a license, the court before hearing such charge shall determine whether such person is an habitual offender, and if so, the court shall certify the case to the proper court of record for trial. *Id.*

Defendant argues, as he did below in an unsuccessful motion to quash the indictment, that his prosecution under § 46.1-387.8 would "unmistakenly and directly follow his making the reports required of him by § 46.1-176." He contends he would have to report to the police, as well as to McDaniel, that he had been driving, that he had become involved in an accident, and that he had no driver's license, it having been revoked in the habitual offender proceeding. He further points out the investigating police officer, obligated to enforce the law upon receipt of the information, would be under a duty to initiate a prosecution for driving without a license, thereby triggering a § 46.1-387.8 habitual offender proceeding. He argues the "reports to be made by Banks under [§ 46.1-176] would provide the Commonwealth with the entire *corpus delecti* of the crime and proof of identity — *every element* — which would be needed for a criminal [habitual offender] conviction with severe penitentiary sanctions."

Prior to the instant offense, defendant served a penitentiary sentence for operating a motor vehicle in November of 1973, in violation of the October 1973 habitual offender order. Thus, he argues that since he had already experienced the "sureness" with which a § 46.1-387.8 prosecution followed the November 1973 arrest, "he could have had little doubt that such a prosecution would follow in Bristol in the aftermath of the May 1975 accident giving rise to this case."

Guided by *California* v. *Byers*, 402 U.S. 424 (1971), we reject defendant's contentions. The California "hit and run" statute, which withstood a Fifth Amendment challenge in *Byers*, required the driver of a vehicle involved in an accident causing property damage to stop at the scene and report to the owner or person in charge of the property the driver's name and address and the owner of the vehicle involved. While not passing on an alternative provision of the same statute requiring a report to police, 402 U.S. at 426, n. 1, the Supreme Court, in a plurality opinion, focused on the "serious questions" resulting from "[t]ension between the State's demand for disclosures and the protection of the right against self-incrimination. . . ." 402 U.S. at 427. *See Ford* v. *Commonwealth*, 215 Va. 308, 208 S.E.2d 921 (1974). "Inevitably these must be resolved in terms of balancing the public need on the one hand, and the individual claim to constitutional protections on the other; neither interest can be treated lightly." 402 U.S. at 427.

The Court went on, speaking through the Chief Justice, to uphold the California statute stating that the group subject to the statute, *i.e.*, all California automobile drivers, was neither "highly selective" nor "inherently suspect of criminal activities," 402 U.S. at 431. The Court there distinguished *Marchetti* v. *United States*, 390 U.S. 39 (1968), *Grosso* v. *United States*, 390 U.S. 62 (1968), and *Haynes* v. *United States*, 390 U.S. 85 (1968), relied on by defendant in the present case. The Supreme Court also noted that "the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here." 402 U.S. at 428. Furthermore, the plurality opined, an "extravagant" expansion of the privilege would result from a determination that the statutory reporting scheme was "testimonial in the Fifth Amendment sense", 402 U.S. at 431, equating the act of stopping with the requirement that one in custody stand or walk in a police lineup, and observing that "[d]isclosure of name and address is an essentially neutral act." 402 U.S. at 432.

In his opinion concurring in the *Byers* judgment, Mr. Justice Harlan disagreed with the grounds principally relied on by the plurality and argued there was a "real" and not an "imaginary" risk of self-incrimination in complying with the California statute. He agreed with the California Supreme Court, reversed in *Byers*, and recognized the existence of the many criminal

sanctions to regulate the class composed of the driving public and coupled that circumstance with "the driver's awareness that his illegal behavior caused the accident" to find "the driver's conclusion that he would incriminate himself by complying with the statute sufficiently plausible to support an assertion of the privilege." 402 U.S. at 438. But Justice Harlan determined, nevertheless, "that the presence of a 'real' and not 'imaginary' risk of self-incrimination is not a sufficient predicate for extending the privilege against self-incrimination to regulatory schemes of the character involved in this case." 402 U.S. at 439. He noted that the State has a vital interest in the individual financial responsibility of motor vehicle owners and operators; that "compelled self-reporting is a necessary part of an effective scheme of assuring personal financial responsibility for automobile accidents", 402 U.S. at 448; and that to extend the privilege against self-incrimination to the "compelled self-reporting" regulatory scheme will impair the state's capacity to pursue simultaneously the objectives of ensuring "financial responsibility for accidents and criminal sanctions to deter dangerous driving". *Id.*

As we turn to the challenged Virginia enactment, our law, regulatory in nature, provides for a stop and a report to the person damaged, as did the statute examined in *Byers*. Unlike *Byers*, however, our statute also requires a report to police. But when we balance the public interest, on the one hand, and the individual's constitutional claim, on the other, the additional requirement of police reporting does not tip the scales in favor of the accused.

In *People* v. *Samuel*, 29 N.Y.2d 252, 277 N.E.2d 381, 327 N.Y.S.2d 321 (1971), the New York Court of Appeals, similarly confronted with self-incrimination attacks, sustained in several cases the validity of that State's "hit and run" statute, which required the motor vehicle operator to report the accident to the police. There the operators, after accidents involving personal injuries to occupants of other vehicles or pedestrians, fled the scene. Such conduct involved, as here, the likelihood of subsequent criminal charges. The New York court employed a balancing test and noted "[t]he simple fact is that a civilized society cannot exist without power to condition lawful activities by limitations essential to the public welfare, even if they affect other protected freedoms. This condition of society requires,

therefore, a balancing of interests, social and individual, to achieve both freedom and survival." 29 N.Y.2d at 258, 277 N.E.2d at 383-84, 327 N.Y.S.2d at 325. Judge Breitel, speaking for the court, further pointed out that "[i]f the purpose of the statute is to incriminate, it is no good. If its purpose is important in the regulation of lawful activity to protect the public from significant harm, especially to the person but also to property, and only the incidental effect is occasionally to inculpate, then the statute is good within constitutional limitations." 29 N.Y.2d at 262, 277 N.E.2d at 386, 327 N.Y.S.2d at 328.

Accordingly, we hold that even though there may be a "real" possibility of self-incrimination to the "hit and run"-habitual offender stemming from enforcement of our statute, nevertheless, the State's vital interest in its self-reporting system compels rejection of an effort to extend the self-incrimination privilege to such statutory framework.

In the limited writ of error, we also agreed to review defendant's complaint that the evidence to convict was insufficient. Defendant contends the Commonwealth failed to prove that he operated the vehicle, that he failed in his duty to report, and that he failed to offer McDaniel reasonable aid. In addition, he argues the final sentence in subparagraph (a) of the statute requiring aid and assistance is unconstitutionally vague.

We have examined each of the foregoing contentions and summarily reject all of them, except the complaint that the evidence failed to support a finding defendant did not make the required reports.

The statute is in the conjunctive and requires a report to the police *and* the injured party. Yet, the trial court, in Instruction 1, tendered by the Commonwealth, stated the duty in the disjunctive — ". . . it was the duty of the defendant to . . . report to the police authority *or* to Joyce McDaniel, . . ." (italics added). Accordingly, this became the law of the case, even though contrary to the statute, and the Commonwealth had the burden to prove both negatives, that is, that defendant did not report to the police and did not report to McDaniel. We believe the evidence was entirely adequate to support the second negative, *i.e.*, a finding defendant failed to report to McDaniel, who was fully conscious at the scene and capable of understanding and retaining information reported to her. But we also believe, as the trial judge stated in ruling on the motion to strike the evidence,

the Commonwealth failed to prove the first negative, *i.e.*, that defendant did not report to the police. Therefore the evidence was insufficient to convict under the law as set forth in the instruction. And we cannot say this was not reversible error because the verdict states, in part, defendant was "guilty of failing to report an automobile accident . . . as is charged in the indictment. . . ." The verdict indicates, therefore, the jury may have decided the evidence was inadequate, as a matter of fact, to find a failure to report to McDaniel, and yet may have based its guilty verdict on a failure to report to the police, a finding upon which the evidence was legally insufficient. For this reason the judgment of conviction is set aside and the case remanded for a new trial.

*Reversed and remanded.*