**Alexandria**
KYONG SUNG KIL
v.
COMMONWEALTH OF VIRGINIA
No. 1491-88-4
Decided July 1, 1991

COUNSEL

Steven M. Garver (Garver & Moller, on briefs), for appellant.

Richard A. Conway, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Kyong Sung Kil appeals his felony conviction by a jury of leaving the scene of an accident which resulted in the death of three individuals. He raises four issues on appeal: (1) whether his statements to the police, which he contends were made in accordance with the duties imposed by former Code § 46.1-176, should have been suppressed; (2) whether the trial court erred in granting a certain jury instruction regarding the duty to report; (3) whether the trial court properly instructed the jury with respect to the element of knowledge; and (4) whether the trial court abused its discretion when it denied his motion for a continuance. Although we find that the trial court did not properly instruct the jury on the element of knowledge, we further find that

this error was harmless beyond a reasonable doubt. We find no error in the rulings of the trial court on the other issues raised by Kil on appeal, and, accordingly, affirm his conviction.

## I.

This case arises from an automobile accident which occurred in the evening hours of March 3, 1988. The evidence at trial showed that Douglas Souther, accompanied by his brother and three friends, was driving his car along Westmoreland Street when one of the car's tires flattened. Souther pulled the car over to the side of the road, turned on his hazard lights and got out of the car. He proceeded to the back of the car to retrieve the spare tire from the trunk. The other occupants also got out of the car and walked to the back of the car, where they remained standing against the rear left side of the vehicle. Souther walked around the car to the passenger side and leaned in to obtain a flashlight. When he came back out of the vehicle, he saw his brother and friends being thrown down the street by a light colored van travelling at a high rate of speed. The van did not stop.

Souther found his brother and two of his friends lying alongside the road, not moving. The fourth passenger, Sean Lawrence, was moving slightly when Souther found him. Lawrence sustained injuries to his legs and pelvis, while the others were killed. Both Lawrence and Souther testified that several individuals stopped at the accident scene to render assistance; however, no one identified himself as the driver involved in the accident.

Several neighborhood residents testified that they heard a loud crash around 9:00 p.m. while inside their homes. One neighbor went outside where she saw Souther coming up her front walk. She could see the others lying in the street. In addition, part of the van's emblem along with other van parts were found at the scene.

At approximately 8:00 a.m. on March 4, 1988, Kil called the police communications center. He spoke with Officer Hennage. Hennage asked Kil his name and address and Kil told Hennage who he was and where he lived. Hennage and Captain Miner responded to Kil's home at approximately 8:00 a.m. Two other officers were also present at the Kil home. Hennage testified that Kil was very upset. He informed Kil of his *Miranda* rights and

Kil signed a written waiver of rights form, along with a consent to search form for the van.

Hennage then asked Kil what had happened. Kil told Hennage that he had been out to dinner with his wife and that they were driving home in separate vehicles. As he was driving down Westmoreland Street he struck something which he thought was a guard rail or a tree limb or a parked car. Hennage asked Kil if he was aware that he had hit four people. Kil acknowledged that he was and repeatedly expressed remorse for what had occurred. Kil also stated that although he knew he hit something, he did not stop. Instead, he drove home, put the van in the garage and went to sleep. Kil repeatedly told Hennage to take the vehicle, to do anything he wanted with it, and that he did not want to see it again.

Investigator Bean testified that while processing the van, he found an enormous amount of glass scattered on the passenger seat and floor of the van and that the front headlight was severely damaged. In addition, evidence was presented at trial that the letters from the emblem recovered at the scene matched the letter recovered from the van, as did pieces of the grill found at the scene.

Kil testified that he drank two or three glasses of sake with dinner before driving home and that he did not remember getting home. He testified that when he woke up he dreamed that something had happened. He turned on the television and heard about the accident. He then went out and looked at the van. He saw that the right side was damaged and called the police. Kil testified that he first knew he was in an accident that morning when he saw the news on television.

At trial, Kil sought to introduce evidence of blood test results pertaining to carbon monoxide levels in his blood and psychological test results. The trial court sustained the Commonwealth's objection to this evidence, finding that chain-of-custody was not established for the blood test information and that a proper foundation had not been laid for admission of the psychological report. Kil then moved for a continuance to obtain the necessary witnesses. The Commonwealth objected, stating that counsel knew in advance that he would have to lay a foundation for his expert testimony and that two jurors had informed the court that day

that they were unavailable the following week. The trial court denied Kil's motion for a continuance. Kil was convicted and sentenced to three years in the penitentiary. This appeal followed.

## II.

Kil argues that the trial court erred by failing to suppress the statements he made to the police communications center on the morning of March 4, 1988, as well as the evidence obtained by the police as a result of this statement. Kil claims that since former Code § 46.1-176 requires an individual who is involved in an accident to report the same to the police, his statement on the morning of March 4 was coerced, in violation of his fifth, sixth and fourteenth amendment rights.[1] The Commonwealth contends the Supreme Court rejected a similar argument in *Banks v. Commonwealth*, 217 Va. 527, 230 S.E.2d 256 (1976), and, thus, this claim is without merit. In addition, the Commonwealth argues that Kil's statements were not made in compliance with former Code § 46.1-176, and, therefore, he cannot rely on the statute as a defense.

In *Banks*, the Supreme Court held that former Code § 46.1-176 did not violate a defendant's fifth amendment rights. The court based this ruling on the plurality decision in *California v. Byers*, 402 U.S. 424 (1971), which upheld the reporting requirements of California's hit and run statute against a fifth amendment challenge. In reaching this determination, the *Byers* plurality employed a balancing test, weighing the public need inherent in the reporting requirements of the hit and run statute against the statute's effect on an individual's claim to constitutional protections under the fifth amendment.

---

[1] Former Code § 46.1-176 reads as follows: (a) The driver of any vehicle involved in an accident in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic and report forthwith to the State Police or local police authority and, in addition, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with, or to the custodian of other damaged property, his name, address, driver's license number and the registration number of his vehicle. The driver shall also render reasonable assistance to any person injured in such accident, including the carrying of such injured person to a physician, surgeon or hospital for medical treatment if it is apparent that such treatment is necessary or is requested by the injured person.

In *Banks*, the Supreme Court found the *Byers* rationale persuasive in evaluating the constitutionality of former Code § 46.1-176, even though the Virginia statute differed from the California statute at issue in *Byers*. The court stated:

> As we turn to the challenged Virginia enactment, our law, regulatory in nature, provides for a stop and a report to the person damaged, as did the statute examined in *Byers*. Unlike *Byers*, however, our statute also requires a report to police. But when we balance the public interest, on the one hand, and the individual's constitutional claim, on the other, the additional requirement of police reporting does not tip the scales in favor of the accused.

*Id.* at 531, 230 S.E.2d at 259.

Kil concedes that the court's holding in *Banks* precludes a facial challenge to the constitutional validity of former Code § 46.1-176. He contends, however, that the statute is unconstitutional as applied. Kil argues that, unlike the defendants in both *Banks* and *Byers*, he actually made statements to the police. He claims that because this information, and the evidence which the police obtained from it, provided the basis for his prosecution, both the statements and the resulting evidence should have been suppressed.

In support of his argument, Kil relies on the Supreme Court decision in *Baltimore City Department of Social Services v. Bouknight*, 493 U.S. 549 (1990). In *Bouknight*, the Supreme Court determined that a mother who is the custodian of a child pursuant to court order could not invoke the fifth amendment privilege against self-incrimination to resist a juvenile court order to produce the child. *Id.* at 561. That court stated, however:

> We are not called upon to define the precise limitations that may exist upon the State's ability to use the testimonial aspects of Bouknight's act of production in subsequent criminal proceedings. But we note that imposition of such limitations is not foreclosed. The same custodial role that limited the ability to resist the production order may give rise to corresponding limitations upon the direct and indirect use of that testimony. The State's regulatory requirement in the usual case may neither compel incriminating testimony nor aid a

criminal prosecution, but the Fifth Amendment protections are not thereby necessarily unavailable to the person who complies with the regulatory requirement after invoking the privilege and subsequently faces prosecution.

*Id.* at 561-62 (citations omitted).

We do not dispute Kil's claim that the above language suggests there may be constitutional limitations on the use of testimony compelled by a regulatory statute when the individual complies with the regulatory requirement after invoking his fifth amendment privilege. However, we find that under the facts presented here, we need not address whether any such limitation exists in the context of a hit and run prosecution, and if it does, whether such a limitation requires a modification of the Supreme Court's holding in *Banks*. The evidence before us shows that Kil did not make the statements at issue in compliance with a regulatory requirement after he had invoked constitutional privileges. His own evidence established that he did not stop as close to the scene of the accident as possible nor did he provide any information or render assistance to the persons involved in the accident immediately after the accident. Rather, he went home and went to sleep. Although Kil did eventually contact the police, this contact occurred approximately ten hours after the accident, while Kil was in his own home. Furthermore, the trial court specifically found that this contact was made freely and voluntarily and not in response to coercion.

Based on this record, we conclude that Kil's statement to the police communications center was not the type of statement to which Justice O'Connor alluded in *Bouknight*. Consequently, we find no merit in Kil's position that admission of the statement into evidence violated his fifth amendment rights, or that the evidence obtained as a result of this statement should have been suppressed. The remaining statements and physical evidence which Kil argues should have been suppressed were obtained after he had waived his *Miranda* rights and consented to a search of the vehicle. Therefore, we also find no error in the trial court's refusal to suppress this evidence.

## III.

Kil next argues that the trial court improperly instructed the jury regarding the elements of the offense. Kil objects to the language of paragraph five of Instruction Number Four on the grounds that it was both improper and prejudicial. That paragraph reads as follows:

That the defendant failed to:

a. report forthwith to the police his name, address, driver's license number, and the registration number of his vehicle; and

b. give the same information to the driver or some occupant of the vehicle collided with; and

c. render reasonable assistance to any person injured in the accident.

Kil argues that no evidence established that he collided with a vehicle. In addition, he argues that because the occupants of the vehicle had been standing outside of the vehicle for at least fifteen minutes prior to the accident, their status had changed to pedestrians. Consequently, he claims that there was no driver or occupant to whom he could make a report.

We find no merit in this argument. The language of paragraph five parallels the language of the statute and was, therefore, a proper statement of the law. Furthermore, evidence was presented at trial from which the jury could conclude that Kil's vehicle struck Souther's vehicle. Finally, the fact that Douglas Souther was not in the vehicle at the time Kil collided with it has no bearing on his status as the driver of the vehicle. The term "driver" is defined as "the person in actual, physical control of a vehicle." *Webster's Third New International Dictionary* 692 (3d ed. 1986). No evidence was presented at trial showing that Douglas Souther had relinquished control of the vehicle at the time of the accident. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). Applying this standard of review, we find no error in the trial court's decision to instruct the

jury in accordance with paragraph five of Instruction Four.

In addition, Kil argues that the trial court erred in denying his jury instructions regarding knowledge. He further claims that the instructions given to the jury by the court did not properly inform them that actual knowledge is an essential element of the crime of hit and run.

In *Herchenbach v. Commonwealth*, 185 Va. 217, 38 S.E.2d 328 (1946), the Supreme Court addressed the type of knowledge a defendant must possess to support a conviction for leaving the scene of an accident. In that case, the court reversed the defendant's conviction, holding that the Commonwealth failed to establish the essential element that the defendant knew his vehicle had struck the decedent. However, in defining the requisite knowledge that the driver of the vehicle must possess, the court stated:

> [Although k]nowledge necessarily is an essential element of the crime, [t]his does not mean that the person should have positive knowledge of the extent of the damage or injuries inflicted. It does mean that, in order to be guilty of violating the statute, "the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known. If an injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or the collision, then it is the duty of the operator to stop his vehicle."

*Id.* at 220, 38 S.E.2d at 329 (quoting 5 Am. Jur. 921). This approach, which has been characterized as "requiring subjective knowledge of the collision while holding the driver to a stricter reasonable man standard as to the fact or extent of the injury," *Commonwealth v. Kauffman*, 323 Pa. Super. 363, 368, 470 A.2d 634, 637 (1983), has been adopted by a number of jurisdictions. *See, e.g., Touchstone v. State*, 42 Ala. App. 141, 155 So. 2d 349 (1963); *State v. Blevins*, 128 Ariz. 64, 623 P.2d 853 (App. 1981); *State v. Carpenter*, 334 N.W.2d 137 (Iowa 1983); *State v. Wall*, 206 Kan. 760, 482 P.2d 41 (1971); *State v. Sidway*, 139 Vt. 480, 431 A.2d 1237 (1981). We are not persuaded by the Commonwealth's argument that a reasonable person standard with regard to the occurrence of the accident is consistent with

*Herchenbach*. Accordingly, we hold that the Commonwealth must prove that the defendant possessed actual knowledge of the occurrence of the accident, and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case.

Two of the instructions given by the court to the jury dealt with the issue of knowledge. Instruction S reads as follows:

Knowledge is a necessary element of the crime charged. This does not mean that Mr. Kil must have positive knowledge of the accident and of the damages or injuries inflicted. It does mean that in order to be guilty Mr. Kil must have been aware or should have been aware that he was involved in an accident and that injury/death was caused to another.

Instruction Four, the finding instruction, reads in part as follows:

(3) That the defendant knew, or should have known, that another person was injured by the accident.

These instructions are consistent with the *Herchenbach* requirement of knowledge attributed to a reasonable person regarding injuries resulting from an accident. Accordingly, we find that the jury was properly instructed on this issue and no additional instructions were needed. *See League v. Commonwealth*, 9 Va. App. 199, 210, 385 S.E.2d 232, 239 (1989), *aff'd on reh'g en banc*, 10 Va. App. 428, 392 S.E.2d 510 (1990) (trial court's refusal to grant instructions concerning principles of law on which the jury has been properly instructed already is not error).

Instructions R and S, which were offered to the trial court by Kil with regard to the knowledge the defendant had to possess as to the occurrence of the accident, were not correct statements of the law. Generally, if a defendant requests an instruction that is wrong in either form or substance, the trial court has no obligation to correct the instruction and give it to the jury. *Whaley v. Commonwealth*, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973); *Sims v. Commonwealth*, 134 Va. 736, 759, 115 S.E. 382, 390 (1922). However, "when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form." *Jimenez v. Commonwealth*, 241

Va. 244, 251, 402 S.E.2d 678, 681 (1991) (quoting *Whaley*, 214 Va. at 355-56, 200 S.E.2d at 558).

In the case before us, the trial court amended the defendant's proffered Instruction S. That instruction, even as amended, however, did not instruct the jury that the defendant must have actual knowledge that an accident has occurred. Moreover, a review of the transcript reveals that the trial court was aware that Kil's theory of the case was that he did not know he was involved in an accident. Consequently, we find that the trial court erred by instructing the jury that the Commonwealth had met its burden of showing knowledge by Kil of the occurrence of the accident by establishing either actual knowledge or such knowledge attributable to a reasonable person under the circumstances of the case.

■ The question remains, however, whether this error is reversible error. The United States Supreme Court has repeatedly stated that harmless error analysis is appropriate in the context of improper jury instructions. *See Rose v. Clark*, 478 U.S. 570 (1986); *Sandstrom v. Montana*, 442 U.S. 510 (1979). Thus, "[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." *Rose v. Clark*, 478 U.S. at 579; *see also Harris v. Commonwealth*, 134 Va. 688, 695, 114 S.E. 597, 600 (1922).

In the case before us, we find that the trial court's erroneous instruction to the jury was harmless beyond a reasonable doubt. We do not believe that the Supreme Court's decision in *Jimenez* requires a different result. In that case, the trial court, in its instructions to the jury, omitted essential elements of the offense. No evidence, however, was presented to the jury relating to those elements. In contrast, in the case before us, the jury had overwhelming evidence before it that Kil possessed actual knowledge of the occurrence of the accident. Consequently, we find that harmless error analysis is appropriate to determine whether the trial court's failure to properly instruct the jury was reversible error.

The evidence offered at trial demonstrated that the right side of Kil's van was damaged extensively. The windshield was shattered and numerous glass particles were scattered along the front seat of the van. Kil's own expert testified that he could tell the van had

been in an accident just by looking at it. Furthermore, the bodies of three of the victims were thrown distances of between 45 and 135 feet from the rear of the vehicle where they had been standing. Residents of nearby homes heard a loud noise from inside their homes at the time of the accident. Kil contacted the police the following morning and told them he had been in the accident. Although Kil testified that he first realized he had been in an accident after hearing about it on the television the following morning, Officer Hennage testified that Kil told him the morning after the accident that, at the time of impact, he thought he had hit a tree or a guardrail or a parked car and did not know why he did not stop. Several witnesses who were present at the scene of the accident, including the driver of the vehicle that was hit, testified that no one stopped and identified himself as the driver of the van involved in the accident. Based on this evidence, including Kil's own statement to Officer Hennage that at the time of impact he knew he had hit something, we find that the trial court's failure to properly instruct the jury on the element of actual knowledge of the occurrence of the accident was harmless error beyond a reasonable doubt.

## IV.

Kil's final argument is that the trial court erred in denying his motion for a continuance made several days prior to the trial and again during the trial itself. "The grant or denial of a continuance lies within the sound discretion of the trial judge." *Snurkowski v. Commonwealth*, 2 Va. App. 532, 535, 348 S.E.2d 1, 2 (1986). With respect to the motion made on September 8, 1988, the trial court's continuance order reserved the right of the defendant to renew the motion the following day when other motions were scheduled to be argued. The motion was not renewed on September 9, 1988, or anytime prior to the trial. Instead, on the first day of trial, defense counsel stated to the trial court that he was ready to proceed. Based on this record, we find that the defendant waived his objection to the court's denial of his motion for a continuance on September 8, 1988.

Kil argues that the trial court's failure to grant his motion for a continuance during the trial deprived him of his right to present evidence on his behalf since his experts' testimony was dependent on the foundation evidence he sought to obtain with the continuance. "Although a continuance may be appropriate when a

litigant is surprised by evidence at trial, 'continuances in the midst of trial should not be an everyday occurrence. . . .' " *Snyder v. Commonwealth*, 10 Va. App. 67, 72, 389 S.E.2d 727, 730 (1990) (quoting *Bennett v. Commonwealth*, 236 Va. 448, 461, 374 S.E.2d 303, 311-12 (1988), *cert. denied*, 490 U.S. 1028 (1989)).

In the case before us, Kil requested the continuance on the third day of trial, Thursday, well into the presentation of his case. That same morning, two jurors informed the trial court that they were not available to serve the following week. None of the evidence Kil sought to obtain by the continuance resulted from surprise at trial. Rather, Kil requested the continuance to obtain witness testimony regarding the administration of certain tests on which he knew his expert witnesses had relied in reaching their opinions. Although counsel proffered to the trial court that one of the witnesses refused to honor a subpoena, no evidence was presented as to when the individual was notified that he would be required to attend the trial or when the subpoena had, in fact, been served. Based on this record, we find that the trial court's denial of Kil's motion for a continuance during trial was within its sound discretion and, therefore, was not error.

For the reasons stated, we affirm Kil's conviction.

*Affirmed.*

Duff, J., and Moon, J., concurred.