COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Annunziata and Overton
Argued at Norfolk, Virginia


JAMES E. HUTSON

                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0541-96-1      JUDGE ROSEMARIE ANNUNZIATA
                                         MAY 13, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                       Jerome B. Friedman, Judge

              Andrew G. Wiggin (Office of the Public
              Defender, on brief), for appellant.

              Kimberley A. Whittle, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.


     Following a jury trial, appellant, James E. Hutson, was

convicted of leaving the scene of an accident involving personal

injury in violation of Code §§ 46.2-894 and 46.2-900.[1]  He

contends that the evidence is insufficient to support his

conviction and that the trial court erred in refusing certain of

his proffered jury instructions.  For the reasons which follow,

we affirm.

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

     [1]Appellant was also charged with malicious wounding.  The
jury was unable to agree on a verdict on malicious wounding, and
the court granted a mistrial with respect to that charge.  In
their briefs, the parties represent that appellant subsequently
entered an Alford plea to a reduced charge of misdemeanor
assault.

I.

On the night in question, appellant and his girlfriend, Jennifer Hughes, began to argue while visiting a friend. The two left in Hughes' car and continued to argue as appellant drove. The dispute escalated and, in frustration, appellant stopped the car, removed the keys, and threw them off an overpass, into a ditch. Appellant left the car to find the keys. By the time he returned after finding the keys, Hughes had left. Some friends picked Hughes up from a gas station, and the group returned to the home of Laurel Russo. Appellant drove Hughes' car to Russo's home, presuming Hughes would go there. Hughes, Russo, Gary Riley, Gwen Hart, and "Bo" Ferko were at the home Russo shared with Riley. Riley answered appellant's knock but told him Hughes was not there. Appellant returned to his home and, upon finding no sign of Hughes, returned again to Russo's home to inquire about Hughes.

Concerning the events that followed, the Commonwealth's witnesses, Hughes, Russo, and Hart, testified as follows. When appellant returned to Russo's home, he was agitated. The group asked appellant to leave, but he persisted in his request to see Hughes. When denied, appellant began to leave. At that point, Hughes asked that appellant leave the keys to her car and walk home. Others in the group asked appellant to leave the keys, but appellant ignored them, walking across the yard and into the street toward Hughes' car. No one in the group threatened or

assaulted appellant, but as he continued toward the car, Hart screamed at him to leave the keys. Appellant walked quickly across the street; Hart followed, alone. When appellant entered the car and attempted to start it, Hart reached in the open driver's side window to remove the keys from the ignition. Appellant started the car, put it in gear and accelerated. The car moved forward with Hart leaning half-way in the window, her lower half hanging out. Appellant accelerated as Hart screamed for him to stop. After driving twenty to thirty feet, appellant cornered the car. Hart fell out as the car rounded the turn.

In his defense, appellant testified to the events subsequent to his return to Russo's home as follows. After appellant knocked on the door, Riley immediately appeared and pushed appellant to the ground. Appellant picked himself up as Riley screamed at him to leave. At that point, the rest of the group left the house, and all began screaming at appellant. Appellant became frightened as the group began using vulgar, threatening language. The group continuously shoved appellant across the yard, off the property. Appellant turned and ran toward the car. The entire group chased him. After appellant entered the car, at least three of the individuals chasing him attempted to enter while continuing to threaten appellant. Intending to flee the scene, appellant started to drive away. Everyone but Hart let go. While holding on to the window sill, Hart ran alongside the car, demanding that appellant stop. After appellant rounded the

corner, Hart was gone. Appellant did not see her fall.

Appellant was then asked what he would have done if he had seen

Hart fall. Appellant responded,
> The point is I didn't know she was hurt; but
> if she was, I still don't know if I would
> have stopped. It would have been a hard
> decision to make at the spur of the moment.
> I've got six people chasing me down. Now, if
> she's hurt, what's going to happen to me if I
> do stop? I don't know if I would have. I
> don't know. It's hard to say.

There is no dispute that Hart was injured as a result of the incident. She temporarily lost consciousness and was treated for a head wound requiring sutures, for a puncture wound to the knee through to the bone, and for multiple cuts and abrasions to her face, hands, feet, and legs. There is also no dispute that appellant left the scene and made no report of the incident.

## II. SUFFICIENCY OF THE EVIDENCE

Code § 46.2-894 provides, in part:
> The driver of any vehicle involved in an
> accident in which a person is . . . injured
> . . . shall immediately stop . . . and
> report his name, address, driver's license
> number, and vehicle registration number
> forthwith . . . . The driver shall also
> render reasonable assistance to any person
> injured . . . .

"The purpose of [the statute] is to prevent motorists involved in accidents from evading . . . liability by leaving the scene of an accident and to require drivers involved in an accident to provide identification information and render assistance to injured parties." Smith v. Commonwealth, 8 Va. App. 109, 115,

379 S.E.2d 374, 377 (1989).

Appellant first challenges the sufficiency of the evidence, alleging that the trial court erred in refusing to grant his motion to strike.

> Where the sufficiency of the evidence is challenged on appeal, that evidence must be construed in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom. In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.

Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (citations omitted). The jury's verdict will not be set aside unless it appears that it is plainly wrong or without evidence to support it. Code § 8.01-680; Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

The specific issue here is whether there is sufficient evidence to support the jury's finding beyond a reasonable doubt that appellant maintained the knowledge requisite for a hit and run conviction.[2] To establish the knowledge element of the offense, "the Commonwealth must prove that the defendant possessed actual knowledge of the occurrence of the accident, and such knowledge of injury which would be attributed to a reasonable person under the circumstances of the case." Kil v.

_____

[2]There is no dispute that the incident in question was an accident within the meaning of the statute. See Smith, 8 Va. App. at 113-15, 379 S.E.2d at 376-77.

- 5 -

Commonwealth, 12 Va. App. 802, 811, 407 S.E.2d 674, 679 (1991). This approach has been characterized as "`requiring subjective knowledge of the [accident] while holding the driver to a stricter reasonable [person] standard as to the fact or extent of the injury.'" Id. at 810, 407 S.E.2d at 679 (quoting Commonwealth v. Kauffman, 323 Pa. Super. 363, 368, 470 A.2d 634, 637 (1983)); see also Herchenbach v. Commonwealth, 185 Va. 217, 38 S.E.2d 328 (1946).

In the present case, we find the evidence sufficient to support the jury's verdict. The evidence established that appellant drove away with Hart's body dangling half-way out the car's driver side window. As appellant drove, Hart screamed for him to stop the car. Instead of stopping, appellant continued, until Hart was thrown free of the car as appellant rounded a turn. Appellant acknowledged his awareness that Hart's presence near the car ceased upon his making the turn. The jury was entitled to discredit appellant's contrary, and wholly contradicted, account of the incident. Moreover, appellant's testimony that Hart merely ran alongside the car with her hand on the window sill is incredible in light of the injuries Hart sustained. Finally, we are unpersuaded by appellant's unsupported argument that the nature of Hart's injuries render her account of the incident incredible as a matter of law. In sum, the evidence belies appellant's assertion that he was unaware of the occurrence of an accident. The same evidence is

sufficient to support a finding beyond a reasonable doubt that a reasonable person would have believed an injury to Hart would have "flowed" from the accident.  See Herchenbach, 185 Va. at 220, 38 S.E.2d at 329.

### III. JURY INSTRUCTIONS

Appellant contends that the jury should have been instructed on the defenses of self-defense and duress and, as well, that "if you find that the defendant reasonably feared bodily injury to himself, then the law does not impose a duty on the defendant to return to the scene of the injury."

"A reviewing court's responsibility in reviewing jury instructions is `to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 707, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  "A defendant is entitled to have the jury instructed only on those theories of the case that are supported by evidence.  The evidence to support an instruction `must be more than a scintilla.'"  Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986). "[F]or purposes of resolving the issue of the trial court's jury instruction, we are concerned with [appellant's] version of the events surrounding the crime[] and not a determination of its truthfulness."  Daung Sam v. Commonwealth, 13 Va. App. 312, 322, 411 S.E.2d 832, 837 (1991).  However, "[a] jury instruction, even

though correctly stating the law, should not be given if it is not applicable to the facts in evidence."  Bolyard v. Commonwealth, 11 Va. App. 274, 277, 397 S.E.2d 894, 896 (1990).

We find no error in the trial court's decision to refuse appellant's proffered instructions.  First, self-defense addresses the use of force by an accused to defend against a threatened harm.  See Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25-26 (1989).  By definition, appellant's act of omission in not stopping after the accident to identify himself and render assistance involved no use of force.  The record contains no evidence to support a theory of self-defense, and the trial court properly refused the proffered instruction.[3]

Second,
> [t]he common law defense of duress excuses acts which would otherwise constitute a crime, where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury.  If the defendant failed to take advantage of a reasonable opportunity to escape or of a reasonable opportunity to avoid doing the acts without being harmed, he may not rely on duress as a defense.

Pancoast v. Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986).[4]  Even assuming that appellant acted under duress in

---

[3]We do not address the applicability of a self-defense instruction vis-a-vis the malicious wounding charge.  That issue is not properly before this Court.  The jury was undecided on the charge of malicious wounding, and the record contains no final order with respect to that charge.

[4]Contrary to the Commonwealth's assertion, the issue of a duress instruction was clearly before the trial court.

failing to return to the scene, the record shows that appellant had a reasonable opportunity to report the accident following his getaway and thereby abide, at least in part, with the purpose of the statute, without being harmed. Because appellant failed in that opportunity, the defense of duress is inapplicable to the facts in evidence. Moreover, the defense of duress presupposes a cognitive decision to commit a criminal act in the face of threats of unavoidable harm. There is no evidence that appellant made such a decision in the present case. Appellant's hypothetical testimony, that it would have been difficult to decide to return to the scene had he known of the accident, did not warrant the instruction.

Finally, appellant offers no authority, and we find none, to support the proposition for which he proffered his remaining instruction. The instruction appears to be a generic amalgam of justification and excuse principles for which there is no support in the law.

The decision of the trial court is accordingly affirmed.

Affirmed.