UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Russell and AtLee
Argued at Richmond, Virginia


TOM JOHN PRICE

v.        Record No. 1632-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
FEBRUARY 19, 2019


FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Paul W. Cella, Judge

David B. Hargett (Hargett Law, PLC, on brief), for appellant.

Alice Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Tom John Price (appellant) challenges the sufficiency of the evidence to sustain his

conviction for felony hit and run under Code § 46.2-894.  He argues that the Commonwealth failed

to prove that he knew or should have known that a person had been injured in an accident in which

he was involved.  For the reasons that follow, we affirm the judgment of the trial court.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below."  Butcher v.

Commonwealth, 69 Va. App. 406, 410 (2018) (quoting Bolden v. Commonwealth, 275 Va. 144,

148 (2008)).  This principle requires us to "discard the evidence of the accused in conflict with that

of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498 (1980) (emphasis and internal quotation marks omitted).

Appellant admits to being involved in an accident with his pickup truck along Route 460 in Nottoway County around 10:00 p.m. on August 3, 2016.

At 7:00 a.m. the day following the accident, Trooper Dustin Eggleston was dispatched to investigate a potential fatal hit and run accident. It was a clear, sunny morning, and, when Eggleston arrived at the accident scene, he observed an "extremely mangled" dark blue bicycle on the right shoulder and a deceased person[1] on the ground in a grassy area between the shoulder and a ditch. The decedent was clothed in a red t-shirt, jeans, and brown boots. He was not wearing any reflective clothing, but bike reflectors were recovered at the scene. The trooper found a bicycle seat between the bike and the decedent. Eggleston also observed a gouge mark in the travel lane about ten inches from the edge of the road. Just under 23.5 feet separated the gouge from the bicycle, and an additional 79.3 feet separated the bike and the body. No streetlights line the roadway near where the body was found.

Headlight debris and part of a bug deflector were recovered from the scene. Police were able to determine that the parts came from a red Ford F-250 pickup truck manufactured between 1999 and 2006. A "be-on-the-lookout" was issued for such a vehicle, and media reports were aired starting between 9:30 and 10:00 a.m. Appellant called the police to report that he had been driving his F-250 on that stretch of road the night before and had hit a deer on his way home. Around 1:47 p.m., Eggleston visited appellant at his residence, where police took pictures of appellant's pickup truck. Eggleston observed that there was "heavy damage" to the truck's front right fender, passenger side headlight assembly, and hood.

---

[1] The medical examiner testified that the person had been killed by blunt force trauma to the head, neck, and torso.

At trial, Eggleston recalled his interaction with appellant. Eggleston relayed that appellant told him that, on the night of the 3rd, he "heard a thump and traveled a couple hundred feet and pulled over and didn't see anything." According to Eggleston, appellant explained that he believed he had hit a deer, called his wife, and "got out and looked at the damage." Eggleston did not recall appellant saying that he had "walked back toward" the site of impact. Eggleston described appellant's demeanor during their encounter as "worried and upset."

At trial, appellant admitted that he struck something with his vehicle on August 3, 2016 as he was driving westbound along Route 460. He was traveling in the right-hand lane at the posted speed limit of sixty miles per hour. He called his wife and told her, "[Y]ou're not going to believe this[;] I just hit a deer." He testified, "As soon as I heard the thump, I came to an immediate halt." He estimated that he stopped three to four hundred feet from the place of impact and relayed that, leaving the vehicle running, he then got out of the vehicle and walked back along the road, beyond the back of his truck, using his cell phone screen to illuminate his path as he "look[ed] to see if there was something laying in the road . . . ." Appellant stated that he briefly inspected his vehicle and "walked back aways to see if [he] could see the deer laying in the road" because he "was going to get it out of the road if it was." He said his search was focused on the road. Not seeing a deer, he called his wife back to inform her he was coming home. Appellant's wife corroborated that he had called her shortly after 10:00 p.m., relaying that he had hit a deer and that about five minutes later, he called her again to tell her that she did not need to come get him.

When appellant left for work the next morning, it was still dark. Appellant explained that when he later saw the news reports that law enforcement was looking for a red Ford F-250, "it dawned on me that I had a truck that fit that description." He called his wife to tell her that he was "going to call the state troopers and let them know that I have a truck that fits that description." He called the phone number provided by the news and relayed that he had a similar vehicle and thought

he had hit a deer as he was driving in the area the night before. He requested that someone look at his vehicle and, when asked over the phone, acknowledged that his truck had a bug deflector on it. Eggleston met him about half an hour later.

During his testimony, appellant asserted that "he never saw anything." Defense counsel asked, "At any point after you heard this thump and struck something . . . did it occur to you that you might have hit a person?" Appellant responded, "No, sir."

In the trial court, appellant challenged the sufficiency of the evidence. Specifically, he argued that his testimony established "that he did not know that he hit anybody, and [that] under the circumstances a reasonable person would not have known they had hit anybody." Appellant emphasized that the appropriate standard is whether "a reasonable person in these circumstances" would or should have recognized that a person had been injured in the accident. Appellant stressed that his action of calling the police when he saw the media reports was additional evidence that he was unaware that a person had been injured at the time of the accident. He noted that his later actions should be given particular weight given that the Commonwealth conceded that it was unlikely that his involvement in the accident would have been discovered absent his call to police.

Having heard the arguments of the parties, the trial court noted that this was a "difficult case" and that it was distinguishable from cases in which the defendant was unaware of any accident at all. In ultimately finding appellant guilty, the trial court stated,

> In this case it's uncontroverted that [appellant] hit something. The question is whether he should have known that somebody was hurt. He says he hit a deer, but didn't see a deer.
>
> We have photographs indicating that the victim's bicycle was right by the road and the victim himself was right by the road and I think that with the victim and the bicycle being right by the road, [appellant] should have known that he hit somebody.
>
> . . . .

- 4 -

I think that based on the evidence I've seen he should have known that he hit somebody . . . [b]ecause he said he didn't see a deer. . . .

So I think the evidence is sufficient, and I'll find [appellant] guilty as charged.

Having found appellant guilty, the trial court sentenced appellant to five years incarceration with all of that time suspended. Appellant appeals, arguing that "the evidence failed to establish that [he] had the requisite actual or constructive knowledge that a person was injured . . ." to support a conviction under Code § 46.2-894.

ANALYSIS

In reviewing appellant's challenge to the sufficiency of the evidence, we note that "it is not for [an appellate court] to say that the evidence does or does not establish [an appellant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Commonwealth v. Perkins, 295 Va. 323, 327 (2018) (quoting Cobb v. Commonwealth, 152 Va. 941, 953 (1929)). We review the conclusions that the factfinder drew from the evidence "with the highest degree of appellate deference[,]" Pijor v. Commonwealth, 294 Va. 502, 512 (2017) (quoting Bowman v. Commonwealth, 290 Va. 492, 496 (2015)), and may reverse the judgment of the trial court only if those conclusions are "plainly wrong or without evidence to support" them, Code § 8.01-680. Thus, the question before us is not whether we would have convicted on the evidence presented, but "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (internal quotation marks and citation omitted).

Appellant was convicted of violating Code § 46.2-894, which provides that

> [t]he driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic, . . . and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency [or] to the person struck and injured if such person appears to

> be capable of understanding and retaining the information . . . . The driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.
>
> . . . .
>
> Any person convicted of a violation of this section is guilty of (i) a Class 5 felony if the accident results in injury to or the death of any person . . . .

It is undisputed that appellant was "[t]he driver of a[] vehicle involved in an accident in which a person is killed[.]" Id. Although he claims to have stopped and conducted a brief investigation of the scene, it also is undisputed that he did not inform law enforcement of the accident "forthwith"[2] or attempt to communicate with or render aid to the person he hit with his truck.

As framed by his assignment of error, appellant alleges that the Commonwealth's evidence was insufficient in one respect regarding one element of the offense. Specifically, he argues that the evidence did not support a conclusion that he had "actual or constructive knowledge that a person was injured" in the accident.

Appellant correctly argues that, to be guilty of felony hit and run, the Commonwealth had to prove he had actual knowledge of the accident itself *and* that he had at least constructive knowledge that an injury or death resulted from the accident. See Herchenbach v. Commonwealth, 185 Va. 217, 220 (1946). Thus, the statute requires the Commonwealth to prove that a driver had "subjective knowledge of the collision while holding the driver to a stricter reasonable man standard as to [knowledge of] the fact or extent of the injury[.]" Kil v.

---

[2] Appellant's call to law enforcement the next day is too far removed from the accident to satisfy the statutory requirement that such communication occur "forthwith." See Butcher v. Commonwealth, 69 Va. App. 406, 418-19 (2018) (discussing meaning of "forthwith" as used in Code § 46.2-894).

Commonwealth, 12 Va. App. 802, 810 (1991) (quoting Commonwealth v. Kauffman, 470 A.2d 634, 637 (Pa. Super. Ct. 1983)).

Here, appellant does not dispute that he had actual knowledge of the accident; he contests whether the evidence was sufficient to support a conclusion that he had actual or constructive knowledge that he hit and injured a person as opposed to a deer. Accordingly, his appeal turns on whether any rational factfinder could have concluded from the evidence that a reasonable person in these circumstances should have known that the accident caused injury or death.

Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to allow a rational factfinder to reach such a conclusion. Although it occurred on an unlighted road, appellant's truck had working headlights. From the photographs of appellant's truck, a rational factfinder could conclude that the impact occurred on the front, right-hand side of the truck and was not a glancing blow off to the side. The dent on the hood of the truck as well as the shattering of the bug deflector supports a conclusion that the decedent and/or his bike was lifted onto the hood of the truck, and thus, at least for a moment, would have been visible to a reasonable driver under the circumstances. Furthermore, physical evidence from the accident scene supports the conclusion that the truck pushed the bicycle 23.5 feet after the initial impact and pushed the decedent more than one hundred feet after the initial impact, supporting a finding that a reasonable person would have recognized the likelihood of significant injury to a person under the circumstances. Kil, 12 Va. App. at 813 (noting that bodies being found "between 45 and 135 feet from" the collision site can be used to support a finding of knowledge). Finally, the mangled nature of the bicycle, the extreme trauma suffered by the decedent, and appellant's statement to Eggleston that he stopped within a "couple hundred feet" of the impact (and thus less than one hundred feet from where the truck deposited decedent's body), also supports a conclusion that a reasonable driver in these circumstances would have known that the accident caused injuries or death. Viewing all of these

factors in their totality, we cannot say that no rational factfinder could conclude that appellant possessed the requisite knowledge of injury or death.

Appellant argues that the evidence he offered requires a different conclusion. Specifically, he notes that the Commonwealth offered no direct evidence to contradict his testimony that he believed that he hit a deer,[3] that he had no knowledge that a person was injured, and that he conducted an investigation of the accident scene that did not reveal the existence of the decedent. According to appellant, this portion of his testimony, which was partially corroborated by his wife's testimony, required the trial court to acquit him. We disagree.

Although appellant's testimony, *if believed* in its entirety, may provide a valid defense to the charge, the trial court was under no obligation to accept, in whole or in part, appellant's testimony. "[T]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder because, unlike an appellate court which reviews only a cold record, the fact finder has the opportunity to see and hear that evidence as it is presented." Hargrove v. Commonwealth, 53 Va. App. 545, 557 (2009) (internal quotation marks and citations omitted). The trial court, as factfinder, had "[t]he power to segregate [appellant's] testimony into the believable, partly believable, or wholly unbelievable[.]" Harper v. Commonwealth, 49 Va. App. 517, 523 (2007). This standard allowed the trial court first to conclude that appellant was "lying to 'conceal his guilt,'" Coleman v. Commonwealth, 52 Va. App. 19, 25 (2008) (quoting Haskins v. Commonwealth, 44 Va. App. 1, 10 (2004)), and then to treat testimony it concluded was false as "affirmative evidence of guilt," id. (quoting Wright v. West, 505 U.S. 277, 296 (1992)). Thus, even though the evidence at trial may have "'support[ed] conflicting inferences,' [we] 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved

---

[3] The Commonwealth concedes that, if appellant had actually hit a deer, the statute would not have required him to stop.

any such conflicts in favor of the prosecution, [the prevailing party below,] and must defer to that resolution.'" Harper, 49 Va. App. at 523 (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)). Accordingly, appellant's testimony is not sufficient as a matter of law to overcome the trial court's factual conclusions based on the other evidence.

The fact that appellant's testimony represents direct evidence and the factfinder's conclusion primarily rested upon circumstantial evidence is of no moment.[4] Virginia courts have long recognized that "circumstantial evidence is competent and is entitled to as much weight as direct evidence." Dowden v. Commonwealth, 260 Va. 459, 468 (2000). Circumstantial evidence often is the only means by which to demonstrate intent or knowledge on the part of a defendant. Neel v. Commonwealth, 49 Va. App. 389, 395 (2007). Because the law did not require that the trial court favor appellant's direct evidence of potential innocence over the circumstantial evidence of his guilt, we cannot say that the trial court erred in concluding that the evidence established appellant's guilt beyond a reasonable doubt.

Finally, appellant argues, as he did in the trial court, that his call to the police the next day establishes his innocence. He suggests that, given the Commonwealth's concession that it is unlikely that he ever would have been identified as the driver absent the phone call, the phone call demonstrates that he did not believe he had engaged in a criminal act, and thus, he must have lacked the requisite knowledge at the time of the accident. Although it is possible to draw such an

---

[4] Black's Law Dictionary defines "direct evidence" as: "Evidence that is based on personal knowledge or observation and that, *if true*, proves a fact without inference or presumption." Direct Evidence, Black's Law Dictionary (10th ed. 2014) (emphasis added). In turn, it defines "circumstantial evidence" as: "Evidence based on inference and not on personal knowledge or observation." Circumstantial Evidence, Black's, supra.

inference, the trial court declined to do so.[5]  We cannot say it was error for the trial court to find appellant guilty despite his call to the police the next day.  See Kil, 12 Va. App. at 813 (affirming a conviction for hit and run despite the fact that the defendant called the police the next day after seeing reports of the accident on television).

In concluding that the evidence was sufficient to support the trial court's finding of guilt, we, once again, stress our limited role on appeal.  Faced with a sufficiency of the evidence challenge, we reverse the trial court's judgment "only if that court's judgment is plainly wrong or without evidence to support it."  Allen v. Commonwealth, 287 Va. 68, 72 (2014) (internal quotation marks and citation omitted).  "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson, 443 U.S. at 318-19).  Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Commonwealth, 280 Va. 672, 676 (2010) (emphasis added).  Because, for the reasons stated above, the evidence was sufficient to support a finding of guilt, we must affirm the decision of the trial court.

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

---

[5] Indeed, the trial court stated from the bench:  "It is true that he did come forward later, and I can't read his mind as to why he did that.  Maybe he had remorse.  Maybe he thought he'd been caught."