

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-1997

# Heidnik v. Horn

Precedential or Non-Precedential:

Docket 97-9000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Heidnik v. Horn" (1997). *1997 Decisions.* Paper 85.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/85

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 97-9000
_____

In re: Gary Heidnik

MAXINE DAVIDSON WHITE,

<u>APPELLANT</u>

v.

MARTIN HORN, COMMISSIONER,
PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
GREGORY WHITE, SUPERINTENDENT OF THE STATE
CORRECTIONAL INSTITUTION AT PITTSBURGH AND;
JOSEPH P. MAZURKIEWICZ, SUPERINTENDENT OF THE
STATE CORRECTIONAL INSTITUTION AT ROCKVIEW AND;
COMMONWEALTH OF PENNSYLVANIA

(E.D. PA Civ. No. 97-cv-02561)
_____

Argued April 17, 1997
Before: BECKER, STAPLETON and COWEN,
<u>CIRCUIT JUDGES</u>.

(Filed April 18, 1997)

Billy H. Nolas, Esq. (Argued)
Robert Brett Dunham, Esq.
Center For Legal Education, Advocacy &
Defense Assistance
437 Chestnut Street, Suite 501
Philadelphia, Pennsylvania 19106

Kathy Swedlow, Esq.
David Wycoff, Esq.
Defender Association of Philadelphia
Federal Court Division
437 Chestnut Street
Philadelphia, PA 19106

Counsel for Appellant

Ronald Eisenberg, Esq. (Argued)

1

Catherine Marshall, Esq.
Donna K. Zucker, Esq.
Office of the District Attorney
1421 Arch Street
Philadelphia, PA 19102

Counsel for Appellees

---

OPINION OF THE COURT

---

PER CURIAM.

This is an appeal from an order of the district court denying the motion of Maxine Davidson White and Betty Heidnik requesting a stay of the execution of Gary Heidnik, appointment of federal habeas corpus counsel on his behalf, and next friend standing.[1] The motion was filed in the district court just over two days ago (April 15, 1997) and the order appealed from, which followed marathon hearings lasting until midnight, was entered the next day at 6:00 p.m. We conducted extensive oral argument yesterday afternoon. This hectic pace, which is a continuum of a similarly paced state court proceeding that commenced on April 11, 1997 and was concluded in the trial court on April 15, 1997 (the matter is presently pending in the Pennsylvania Supreme Court), is a function of the fact that the Governor of

---

[1]The motion was originally filed in the name of Gary Heidnik, but, appended to the moving papers was the affidavit of Maxine Davidson White, Heidnik's daughter, who sought appointment therein as next friend. After a careful review of the record, and pursuant to our authority under Fed. R. App. P. 43, we have substituted her as a party. Betty Heidnik has also claimed next friend status, but because her relationship to Heidnik remains unclear (she appears to be his ex-wife), it would not appear at present that she qualifies.

2

Pennsylvania has issued a warrant for Heidnik's execution in the Pennsylvania death chamber at the State Correctional Institution at Rockview, which expires on April 19, 1997.  For the reasons that follow, we vacate and remand with directions.

## I.  FACTS AND PROCEDURAL HISTORY

These proceedings have their origin in a series of heinous crimes committed by Heidnik over a six month period in 1986–87.  According to the record of his convictions, Heidnik kidnapped and tortured six women, murdering two of the victims by various forms of physical abuse and starvation.  In 1988, a jury convicted Heidnik of first degree murder and returned two sentences of death.  Heidnik personally petitioned the state courts to conduct no appellate review and to expedite his execution.  The state supreme court, however, engaged in statutorily mandated review of limited issues of state law and affirmed the judgment of sentence. See Commonwealth v. Heidnik, 587 A.2d 687 (Pa. 1987).

Heidnik made no further effort to challenge his sentence, but his execution was delayed by the decision of the former Governor not to issue warrants of execution.  The current Governor issued the presently outstanding warrant on March 20, 1997.  On April 11, 1997, attorneys seeking to represent Heidnik filed a petition in the Philadelphia Court of Common Pleas asserting that Heidnik was incompetent to be executed. See Ford v. Wainright, 477 U.S. 399 (1986).  The trial judge convened a hearing on Monday, April 14.  When called to the stand, Heidnik reaffirmed his previous position that he did not want to appeal his sentence.  Counsel elicited from him his belief in various

3

conspiracy theories, centering on his assertion that he was innocent of the murders and had been framed by the victims and corrupt police officers.

Heidnik's delusional beliefs are illustrated by excerpts of his testimony before the state trial court. Heidnik believes that the kidnapped victims carried out the two killings of which he was convicted:

I think they killed Ms. Lindsay -- it's possible that they killed her because she was a lesbian. And I didn't know that, and you know, up until that time.

***

The reason I mentioned this was because they killed her the next day, they killed her the next day, which suggests that they either killed her because she was a lesbian or this gave the excuse they were looking for.

***

Rivera was the brains behind it. But Ms. Thomas I'm pretty sure did the actual killing.

***

And do you understand I'm guilty of everything but murder? I didn't murder those two women. Do you understand that?

He also believes that the FBI can establish his innocence:

[The FBI is needed so] I could prove I had not murdered these two women ...

In fact, he has constantly sought to contact the FBI in this regard for many years. Additionally, because of his claimed innocence, Heidnik believes that the outrage caused by his execution will result in the end of capital punishment:

I say real or phony, they can execute me, because I am innocent and I can prove it. That is the end of capital punishment in this state. When you execute an innocent man, knowingly execute an innocent man, you know there will be no more capital punishment in this state and possibly anywhere else

4

> in this country.  And you know I didn't kill them two women.  Go ahead and execute me.  That's going to be the last time you ever execute anybody in this country.  That's the end of capital punishment.

***

> Yes, I want you to execute an innocent man so there will be no more capital punishment ....

***

> I want to be executed because I want to be the last man in this country ever executes [sic], that's the end of capital punishment ... You don't do that shit, not in America.  And you're not going to do it anymore because I'm ending capital punishment.

Petitioning counsel maintained that Heidnik's protestations of innocence demonstrated that he must be delusional and that his willingness to be executed was a product of mental illness.  The court thereupon arranged for a psychiatric examination by a member of the court's mental health unit, Dr. John O'Brien, a forensic psychiatrist.  The examination, which lasted some 90 minutes, took place in the presence of the stay petition attorneys and counsel for the Commonwealth.  Dr. O'Brien also reviewed court records, materials prepared by the Commonwealth, and affidavits prepared by the stay petition attorneys on the question of Heidnik's competence.  The hearing then reconvened for Dr. O'Brien's testimony, which was to the effect that Heidnik understands that he is to be executed, and why, and that he is able to make his own decisions about his fate.

The judge credited O'Brien's testimony, and denied Heidnik's request for a stay.  An appeal to the Pennsylvania Supreme Court is pending.  That court has stayed Heidnik's execution, though it

has indicated that it will act upon the matter by noon on April 18, 1997.

Dr. O'Brien was also the Commonwealth's key (and only) witness at the proceedings in the district court. The district court proceedings, however, addressed not the <u>Ford v. Wainwright</u> issue presently before the state supreme court, which inquires whether a defendant is capable of comprehending the reasons for the penalty and its implications, but rather the issue framed by <u>Whitmore v. Arkansas</u>, 495 U.S. 149 (1990), which asks whether the putative next friend has provided an adequate explanation why the real party in interest cannot appear on her own behalf to prosecute the action.[2] The petitioners adduced the testimony of three psychiatrists, each of whom had examined Heidnik during his incarceration in the Pennsylvania prison system, Dr. Lawson Frederick Bernstein, Jr., Dr. Stewart Wellman, and Dr. Clancy McKenzie.

After consideration of the aforementioned testimony, the district court filed a memorandum and order in which it denied all requests for relief. The court concluded that Ms. White had not met her burden of proof with regard to Heidnik's incompetence. It accordingly held that she did not have standing before the court and denied her next friend status. We address the evidence adduced before the district court and its findings in the next section.

_____

[2] There is no dispute that Ms. White meets the second qualification of <u>Whitmore</u> that the next friend must be truly dedicated to the best interests of the person on whose behalf he or she seeks to litigate.

6

The court noted that stay petition attorneys also had presented an application under McFarland v. Scott, 114 S. Ct. 2568 (1994), for appointment of habeas counsel, but in view of its denial of next friend status, the court did not reach the McFarland issue. Taking cognizance of the principle of habeas corpus jurisprudence requiring the exhaustion of state remedies, but referencing the stipulation of the parties that the court could consider jurisdictional issues at any time, the court deemed there to be a waiver of any exhaustion requirement with respect to the issues before it.[3] The court continued the temporary stay of execution until such time as this Court ruled on any appeal.

## II. THE DISTRICT COURT RECORD AND FINDINGS

The testimony of the three witnesses for petitioners was similar and consistent. All three had seen Heidnik professionally on a number of occasions while he was incarcerated at the State Correctional Institution at Pittsburgh, and Dr. Bernstein had treated Heidnik. They agreed that Heidnik is a paranoid schizophrenic with a well-developed paranoid delusional system. In Bernstein's view, Heidnik has a

> series of fixed false beliefs which are patently absurd and inconsistent with reality, which are all-encompassing in nature and which color every aspect of his cognitive functioning.

Bernstein concluded that it was inconceivable that Heidnik could "rationally understand the nature of the proceedings." (emphasis

---

[3]The district court also pointed out that the current habeas statute, 28 U.S.C. § 2254(b)(2), provides that an application for a writ may be denied on the merits even in the absence of exhaustion. Accord Granberry v. Greer, 107 S. Ct. 1671 (1987).

added). This was because, in Bernstein's view, Heidnik's perception of reality was so completely flawed that he could not interact effectively with counsel.[4] He further observed that there was no point of contact between Heidnik and the rational world.

Dr. Wellman, the chief psychologist of the State Correctional Institution at Pittsburgh, testified that Heidnik's delusions are a function of his paranoid schizophrenia, and that the illness and its underlying delusional content renders him incompetent. Dr. McKenzie, a psychiatrist who evaluated Heidnik at the time of the original trial proceedings, testified that Heidnik has been a paranoid schizophrenic since 1963, that he is unable <u>rationally</u> to appreciate the nature of the proceedings, and that he interprets everything according to his fixed delusional beliefs.[5]

All three psychiatrists appearing for petitioner agreed that the existence of delusions and a diagnosis of paranoid schizophrenia do not preclude rational conduct and competence. However, all three opined that such was not the case with Heidnik. For example, Dr. Wellman explained that, although in the

---

[4]Bernstein described Heidnik's perceptions of reality as being that

this entire event is a far reaching conspiracy in which he is the victim of the fact that the [victims] killed themselves and are now perpetrating a fraud against him, such that he will be executed for a crime that he did not commit.

[5]Dr. McKenzie further testified that the sicker Heidnik becomes the more he wants to commit suicide. Dr. McKenzie viewed Heidnik's express desire to be executed as consistent with the desire for suicide.

abstract a person can be schizophrenic and competent, it is the content of a particular delusion that determines whether a delusion affects competency. In Dr. Wellman's view, the nature of Heidnik's delusions renders him incompetent, "because he is seeing people as something other than what they are and is likely to interact with them based on an agenda dictated by his delusional belief." Drs. Bernstein and Mackenzie essentially agreed.

Dr. O'Brien, the sole witness for the Commonwealth, met with Heidnik on only one occasion -- the examination arranged by the state trial court. Dr. O'Brien essentially testified that Heidnik was not a paranoid schizophrenic, that he was not delusional, that he was not mentally ill (at least at the time of his examination), and that he was not incompetent. The central theme of Dr. O'Brien's testimony was that what the petitioner viewed as Heidnik's delusions -- primarily his belief that subsequent to his execution there would be a widespread recognition of his innocence and a consequent outcry against capital punishment and a process undertaken to abolish it -- was not a delusion but rather "an attempt on his part to recast what would otherwise be a rather tragic end to an individual into something of social value." He continued

> He maintains a belief in his innocence in the murders. He admitted to being guilty of all of the other associated crimes and believed that he had reasonable and scientific data to support his belief that he was innocent. And, as I indicated in my testimony yesterday, I see many criminal defendants a week and at least half of the post-trial defendants I see assert their innocence when I see them. I am not a fact finder, I'm an opinion renderer, and I cannot second-guess what the court has determined, the guilt or innocence to be, but it's not at all uncommon for an individual who has been found guilty to represent to me

9

that they are in fact innocent. I don't regard that as delusional and I don't regard it as delusional in Mr. Heidnik's situation either.

The district court's opinion turns heavily on [two passages from] Dr. O'Brien's testimony. They are as follows:

He recurrently demonstrated an awareness of his current circumstances and based upon the representations he made to me and also the transcript of his testimony in the hearing yesterday, it is my opinion that he is clearly knowingly waiving his rights to appeal, in the sense that he knows that appeals are possible at this point in time and he is knowing that information and that he is facing death without the appeal, and he is knowingly terminating or declining to pursue further appeals. I don't think there is any dispute that he is intelligent in the sense that he has a great deal of innate intelligence. And in my opinion it's voluntary because I have not seen anything in the record or heard from Mr. Heidnik anything that would indicate that he is under duress of any sort, from external forces or internal forces, to give up his appeals.

Only that the vast majority of schizophrenics are law-abiding citizens who function from day to day and have clear, cognitive functioning. And even if Mr. Heidnik does have paranoid schizophrenia, and I was seeing him during a moment in time when his symptoms were relatively quiescent, it doesn't negate in any way my opinion that cognitively he's intact, and he's aware of his current situation and what he's facing, and is able to make a decision regarding waiver of his further appeals.

Although the Commonwealth's position rests heavily upon Dr. O'Brien's testimony, the district court clearly rejected the central core of that testimony, for it found that Heidnik suffers from paranoid schizophrenia. Although the district court did not say so in terms, it is also clear from its discussion that the district court found Heidnik to be delusional. Indeed there is no

10

evidence in the record, with the exception of Dr. O'Brien's discredited testimony, that he was anything other than delusional. The linchpin of the district court's opinion, then, has to be its crediting of Dr. O'Brien's testimony that even if Heidnik were paranoid schizophrenic, he is still able to make a decision regarding waiver of his further appeals. It must be noted that Dr. O'Brien focused on Heidnik's ability to recognize and process the factual circumstances attendant to that decision, but did not address whether the ultimate decision was itself rational. Accordingly, the district court made no findings about the rationality of Heidnik's choices.

### III. DISCUSSION

The appeal before us is primarily that of a putative next friend seeking to establish that the death row inmate was unable to proceed on his own behalf. Whitmore places the burden of proof on the putative next friend to establish by clear evidence the inability of the death row inmate to appear on his own behalf to prosecute the action. Brewer v. Lewis, 989 F.2d 1021, 1026 (9th Cir. 1993). That prerequisite is not satisfied when an evidentiary hearing demonstrates that "the defendant has given a knowing, intelligent, and voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded." Whitmore, 495 U.S. at 165. Our review of the district court's finding that petitioner did not meet this burden is for clear error. See In re: Zettlemoyer, 53 F.3d 24 (3d Cir. 1995).

To fully understand the Whitmore standard, we must examine two earlier Supreme Court cases. In Rees v. Payton, 384 U.S. 312

11

(1966), the Court stated in the context of a party's ability to waive his right to further appeals that:

> The court must determine whether [the petitioner] has the capacity to appreciate his position and make a <u>rational</u> choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

(emphasis added). In terms highly relevant here, the <u>Whitmore</u> standard is further illuminated by the Court's opinion in <u>Dusky v. United States</u>, 362 U.S. 402 (1960) (per curiam), in which the Court considered the standard for determining competency to stand trial. There the Court stated that the "test [for competency] must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a <u>rational as well as factual</u> understanding of the proceedings against him." <u>Id</u>. at 402 (emphasis added).[6]

The district court's conclusion that the petitioner had not clearly established that Heidnik lacked the capacity to make a knowing, intelligent, and voluntary waiver with respect to continuing or abandoning habeas corpus proceedings turns upon its crediting of O'Brien's testimony that Heidnik "is cognitively intact, aware of his current situation and what he is facing, and is able to make a decision regarding waiver of his further

---

[6]Although <u>Whitmore</u> was decided after <u>Dusky</u> and <u>Rees</u>, we do not read <u>Whitmore's</u> reference to knowing, intelligent, and voluntary waiver to be divorced from the fundamental concept that underlies any notion of competency -- that of rationality. <u>See</u> <u>Lafferty v. Cook</u>, 949 F.2d 1546 (10th Cir. 1991). <u>Lafferty</u> is in accord with our distinction between factual and rational understanding.

appeals." But, given the district court's finding that Heidnik is a delusional paranoid schizophrenic, that testimony is, as a matter of law, insufficient to support a finding of competence as understood in light of Rees and Dusky. While there is no dispute as to Heidnik's considerable intelligence and expressive powers, a factor that obviously influenced O'Brien, and it may be that the evidence would support a finding that Heidnik could make some or other decision regarding waiver of further appeals, there is no evidence, and no finding, that Heidnik could make a rational decision in that regard.

This is not a mere matter of semantics or of a witness or judge leaving out a key term because of the pressure of last minute proceedings. Rather there is a fundamental flaw in the record as developed as is demonstrated by O'Brien's proffer of what the Commonwealth suggested at argument was a rational explanation of Heidnik's conduct -- the social value rationalization explanation we described in setting forth O'Brien's testimony at p.9 supra. That is because, as we have also explained, the district court rejected that testimony when it found that Heidnik was a delusional paranoid schizophrenic; a finding that is supported in the record and is not clearly erroneous.

The Commonwealth and the district court do have a fall-back position: Dr. O'Brien's alternative testimony that Heidnik is competent even if he is delusional. However, O'Brien offered no explanation as to the content of the delusion that would enable a determination whether the delusion affected Heidnik's competency,

13

see supra p. 9, so as to explain why his conduct was rational. The Commonwealth seeks to fend this by pointing out that O'Brien testified that Heidnik had acted knowingly, intelligently, and voluntarily, thus satisfying Whitmore. But this testimony is not linked to any explanation of Heidnik's conduct and does not address the critical distinction between factual and rational decision making.

In the final analysis the record reflects a situation in which a paranoid schizophrenic suffering from broad-based delusional perceptions has made a decision to die immediately rather than pursue available judicial remedies that conceivably might spare his life. The only explanation he has advanced for having chosen immediate death is that after his death the public will become convinced that he was an innocent victim of a conspiracy and that the realization that he has been executed though innocent will end capital punishment once and for all. Petitioners' three experts unanimously concluded that Heidnik's death decision is based on his delusional perception of reality—and has no rational basis. Dr. O'Brien has simply failed to explain how Heidnik's choice has a rational basis and is not based on his delusional perception.

In short, the record does not support a rational explanation as to why, even if Heidnik has rationalized to himself that he was innocent, he could, despite his delusions, make a rational decision to die. A psychiatric expert might have supplied this, but O'Brien did not. In the absence of any effective counter, the petitioner has met her Whitmore burden, and the order of the

14

district court must be vacated.[7]

## IV.  CONCLUSION

In view of the exigent procedural posture of the matter, created by the outstanding death warrant, we must be precise as to the terms of our judgment.  We will order as follows:

1.  To the extent that a certificate of appealability is necessary, it is granted on the sole issue presented by this appeal.

2.  The order of the district court of April 16, 1997 is hereby vacated and the case remanded to the district court with directions forthwith to designate Maxine Davidson White as Heidnik's next friend, and to appoint counsel for her.

3.  The district court is directed forthwith to enter an

---

[7]We note that in his concurring opinion in Ford v. Wainwright, 477 U.S. 399, 426 (1986), Justice Powell stated that once a defendant is found competent to stand trial, as Heidnik was, the state is entitled to presume that the defendant remains sane when the sentence is carried out.  See also Demosthenes v. Baal, 495 U.S. 731, 735 (1990)(state court finding that defendant had given a knowing, intelligent, and voluntary waiver of his right to review was entitled to a presumption of correctness under then 28 U.S.C §2254(d), now § 2254(e)).  We are aware that the state court recently rejected a Ford claim that petitioner is not competent to be executed.  In that proceeding, however, petitioner was not permitted to call a psychologist, Dr. Levitt, on the basis that he had not made a sufficient proffer even though counsel pointed out that Dr. Levitt had been present during Dr. O'Brien's examination.  Commonwealth v. Heidnik, 4/14/97 Tr. p. 134-141.  Another of petitioner's proposed witnesses, Dr. Bernstein, who was available by telephone, was not called for reasons that are not entirely clear.  At all events, the findings by the state court are currently under review by the Pennsylvania Supreme Court.  Under these circumstances, the presumption would not appear to be operative.  Moreover, as our discussion of the evidence presented in the district court demonstrates, the petitioner has rebutted this presumption here by clear and convincing evidence as required by 28 U.S.C. § 2254(e)(1).

15

order continuing its stay of execution, pending action upon the McFarland petition which has been filed with the district court. While we are aware of no factors that might give rise to an exception to the normal presumption in favor of appointing counsel and granting a stay under McFarland, the record on this point is not developed and the Commonwealth may wish to be heard.

_____