COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Willis and Lemons
Argued at Richmond, Virginia


DENNIS JACKSON MOORE

                                        MEMORANDUM OPINION* BY
v.    Record No. 1088-97-2         JUDGE JAMES W. BENTON, JR.
                                           MARCH 16, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      L.A. Harris, Jr., Judge

            Cary B. Bowen (Amy M. Curtis; Bowen, Bryant,
            Champlin & Carr, on brief), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     A jury convicted Dennis Jackson Moore of first degree

murder, use of a firearm while committing murder, robbery, and

use of a firearm while committing robbery.  On appeal, Moore

argues that the trial judge erred by (1) ruling that Moore's

statement was voluntary, and (2) refusing a jury instruction

proffered by Moore concerning the voluntariness of his statement.

Because the evidence proved that Moore's statement was voluntary,

the trial judge did not err in denying Moore's motion to

suppress.  Furthermore, the trial judge's refusal to instruct the

jury concerning voluntariness was not reversible error.

                              I.

     As Vance Michael Horne, Jr. and Jonathan Cooper walked

through a parking lot after leaving a dance at a recreation

_____

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

center, someone approached them from behind and put a gun to Cooper's back. The assailant ordered Cooper to give him a neck chain Cooper was wearing. As Cooper removed his chain, Horne turned and told the assailant "[t]here's no need for this, just relax, everything is going to be cool." The assailant told Horne not to look at him and again instructed Cooper to remove his chain. When Cooper handed his chain to the assailant, the assailant shot Horne and ran into a nearby wooded area. Horne died from a gunshot wound to the head.

Following several months of investigation, Detective James Dorton arrested Dennis Jackson Moore, who was seventeen years old. During an interrogation, Moore told the detective that he robbed Cooper and shot Horne. Prior to trial, Moore moved to suppress his statement, claiming that he did not voluntarily waive his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The trial judge denied the motion. At trial, a jury convicted Moore of first degree murder, use of a firearm in the commission of murder, robbery, and use of a firearm in the commission of robbery.

## II.

"When a motion to suppress is reviewed on appeal, the burden is on the appellant to show that the ruling, when the evidence is considered in the light most favorable to the Commonwealth, constituted reversible error." Ford v. Commonwealth, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998).

> Whether a statement is voluntary is ultimately a legal rather than factual question. Subsidiary factual questions, however, are entitled to a presumption of correctness. The test to be applied in determining voluntariness is whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." In determining whether a defendant's will has been overborne, courts look to "the totality of all the surrounding circumstances," including the defendant's background and experience and the conduct of the police.

Gray v. Commonwealth, 233 Va. 313, 324, 356 S.E.2d 157, 163 (1987) (citations omitted). "In performing such analysis, we are bound by the trial [judge's] findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

At the suppression hearing, the detective testified that he first questioned Moore at Moore's home soon after the shooting. Moore, who was at home by himself, told the detective he was seventeen years old and he did not want to contact his parents. Moore answered the detective's questions concerning his knowledge of the killing. Later that night, Moore's mother called the detective to inquire about his visit. The detective informed her that he was investigating the robbery and killing. A day later, the detective returned to Moore's home. Moore told the detective that his stepfather was coming home and requested that the

detective wait for his stepfather's arrival.  When Moore's stepfather arrived and learned that the detective wanted to question Moore, Moore's stepfather said he would contact an attorney and notify the detective when they could "get back together and talk."

Two weeks later, the detective obtained warrants for Moore's arrest.  The detective testified that when he and another officer went to Moore's home, Moore's stepfather took them to Moore's bedroom where Moore was sleeping.  They arrested Moore and led him outside.  The detective testified that he told Moore's stepfather that either he or Moore would "be in touch" later that day.  He denied that Moore's stepfather instructed him not to question Moore until Moore's stepfather or his attorney was present.

At the Public Safety Building, the detective placed Moore in an interview room and read to Moore <u>Miranda</u> warnings from a card. He also informed Moore that because Moore was a juvenile, Moore could have his parents present during the questioning and that Moore could be tried as an adult.  Moore indicated he understood his rights and was willing to talk, but he first wanted a cigarette.  The detective gave Moore a cigarette and then left the room to activate a videotape machine that was connected to a camera in the interview room.  The detective returned to the interview room and questioned Moore at length concerning the robbery and killing.  Moore confessed that he robbed Cooper of

the chain and accidentally discharged the gun killing Horne during the robbery.

At the hearing, Moore introduced testimony from his stepfather. Moore's stepfather testified that when the detective arrested Moore, he asked the detective not to question Moore until he could secure an attorney or be present for the questioning. Moore also introduced evidence from Dr. Cobb, a psychologist, that Moore was incapable of understanding the Miranda warnings. The psychologist testified that "throughout [Moore's] academic career he's had learning problems, and poor grades and difficulty with learning and attention deficit disorder."

In rebuttal, the Commonwealth introduced evidence from Dr. Nelson, a psychologist, who testified that Moore was not retarded or mentally ill. Dr. Nelson also testified that Moore had no difficulty "with his ability to comprehend and understand directions" and had the capacity to understand the Miranda warnings.

The trial judge denied Moore's motion to suppress the statement. In his factual findings, the trial judge ruled that (1) the detective properly advised Moore of the Miranda warnings, (2) Moore at no time requested to stop the interview, (3) Moore's stepfather could not legally invoke Moore's rights, (4) Moore's stepfather did not tell the detective that he should not talk with Moore without Moore's stepfather or attorney being present, (5) Moore was not coerced into making his statement, (6) Moore

waived his rights, and (7) Moore was capable of understanding the Miranda warnings.

Contending that the evidence proved that he was coerced into making his statement, Moore first claims the detective ignored his stepfather's demand that he not question Moore until either Moore's stepfather or his attorney was present. However, the detective testified that Moore's stepfather made no such demand. The trial judge, in denying Moore's motion to suppress, believed the detective's testimony and found that Moore's stepfather never instructed the detective not to talk with Moore. This is a credibility finding, based on conflicting evidence and binding on appeal because it is supported by credible evidence. See Matthews v. Commonwealth, 207 Va. 915, 921, 153 S.E.2d 238, 242 (1967). Furthermore, this Court has held that a juvenile's statement to the police is not made invalid solely on the basis that a parent was not present. See Novak v. Commonwealth, 20 Va. App. 373, 387, 457 S.E.2d 402, 409 (1995). The evidence proved Moore was told several times that he could have his parents present during the interrogation. Each time the detective asked Moore if he wanted his parents present, Moore responded that he did not.

Moore next argues that the detective lied to him on several occasions during the interrogation and that, by lying, the detective coerced him into making his statement. While the detective's decision to employ lying and deceit as an interrogation technique "'may undermine the respect that

- 6 -

significant segments of the public may have for law enforcement and the system of justice[,]'" id. (citation omitted), it "'"does not, in and of itself, require a finding that [Moore's] confession was involuntary."'" Id. at 388, 457 S.E.2d at 409 (citation omitted).

Moore next points to the detective's act of providing him with a cigarette. Persons under the age of 18 may not lawfully possess cigarettes. See Code § 18.2-371.2(B). Furthermore, a person may not provide cigarettes to a minor. See Code § 18.2-371.2(A). However, the detective's conduct in providing Moore with a cigarette does not tend to prove Moore's statement was involuntary. Moore asked for the cigarette. None of this evidence tends to prove that the voluntariness of Moore's confession was affected by the provision of the cigarette.

Moore next argues that even if each of these circumstances does not individually prove coercion, the totality of these circumstances, in light of his age and mental condition, proved coercion. Moore presented evidence that he had failed the ninth grade, was in special education, had been diagnosed with a learning disability, and had failed the written portion of the driver's exam approximately seven times. However, the Commonwealth's clinical psychologist testified that after interviewing Moore and viewing the videotaped interrogation, he did not "have any concerns about . . . Moore's capacity to understand a Miranda warning."

Moore argues that the Commonwealth's psychologist only interviewed Moore for one hour and ignored the fact that Moore was learning disabled and suffered from a behavioral disability. This argument speaks to the credibility of the witness' testimony. The trier of fact, not this Court, weighs the credibility of expert witnesses. Hill v. Commonwealth, 8 Va. App. 60, 64, 379 S.E.2d 134, 137 (1989) (en banc). The trial judge's decision to view Dr. Nelson's testimony as more credible than Dr. Cobb's is one that was within his discretion as trier of fact. See Commonwealth v. Presley, 256 Va. 465, 470, 507 S.E.2d 72, 75 (1998). The trial judge's finding, which relied upon the opinion of the Commonwealth's expert witness, was not plainly wrong.

Moore further argues that he did not fully understand the charges against him when he waived his rights. During the interrogation, the detective asked whether Moore understood the charges. When Moore responded, "Not really," the detective described the circumstances surrounding the shooting but did not tell Moore the specific charges against him. He did not tell Moore the specific charges until the interrogation was almost concluded and after Moore had incriminated himself.

The essence of Moore's argument concerning these circumstances is that he did not knowingly waive his rights. However, that issue is barred under Rule 5A:18. At no point during the hearing did Moore argue that his statement was not knowingly made. On appeal and in brief, Moore framed the issue

as: "Did the trial court err in failing to suppress the defendant's videotaped statement as being involuntary?" Therefore, we will not rule on the issue whether Moore knowingly waived his rights. See Rule 5A:18.

For these reasons, we hold that the trial judge did not err in ruling that Moore's statement was voluntary. Accordingly, we affirm the judge's decision to deny Moore's motion to suppress the statement.

### III.

The trial judge also denied two jury instructions proffered by Moore concerning the voluntariness of his statement. The first instruction would have instructed the jury as follows:

> If you believe that Dennis Moore did not
> freely and voluntarily give a statement to
> law enforcement officers concerning his
> alleged involvement in the murder of Vance
> Michael Horn, then you should give such
> statement no weight.

The second instruction, taken from this Court's decision in Goodwin v. Commonwealth, 3 Va. App. 249, 253, 349 S.E.2d 161, 163-64 (1986), reads as follows:

> In determining whether the statement [Moore]
> made to [the detective] was voluntary, you
> should consider whether in light of the
> totality of the circumstances, including not
> only the details of the interrogation, but
> the characteristics of [Moore], the statement
> was the product of an essentially free and
> unconstrained choice by [Moore], or whether
> [Moore's] will was overcome and his capacity
> for self-determination critically impaired.

The trial judge refused the instructions and ruled that, in light of the general instruction regarding the weight the jury must

give all of the evidence, these instructions "unduly [select] one piece of the evidence."

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (citation omitted).

> "The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for the court to assist them. The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relation of the particular evidence adduced to the particular issues involved. In his [or her] instructions the trial judge should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled."

Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (quoting 75 Am. Jur. 2d Trial § 573 (1974)). "'Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced.'" Stewart v. Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 514 (1990) (quoting Simms v. Commonwealth, 2 Va. App. 614, 616, 346 S.E.2d 734, 735 (1986)). We further recognize that "[w]hen a trial judge instructs the jury in the law, he or she may not 'single out for emphasis a part of the evidence tending

to establish a particular fact.'" Terry v. Commonwealth, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987) (citation omitted).

The following principle is well established:

> When a confession of the accused is offered into evidence, the trial judge must rule upon its admissibility. The duty of the trial judge is to determine from the evidence, in the absence of the jury, whether the confession was freely and voluntarily given. If the confession is freely and voluntarily given, it is admissible, and its credibility, weight, and value are for the jury to determine.

Jefferson v. Commonwealth, 6 Va. App. 421, 424-25, 369 S.E.2d 212, 214 (1988) (citations omitted). See also Williams v. Commonwealth, 11 Va. App. 149, 153, 396 S.E.2d 860, 862 (1990).

Relying on McCoy v. Commonwealth, 206 Va. 470, 144 S.E.2d 303 (1965), the Commonwealth argues that the instructions proffered by Moore improperly requested the jury to rule on the admissibility, and not the weight, of his statement. In McCoy, the Supreme Court ruled improper an instruction that would have informed the jury that if it found that the police coerced the defendant into making his confession, "then the confession was not voluntary, and you shall not consider the same." Id. at 475 n.1, 144 S.E.2d at 308 n.1. The Court held that the instruction would have improperly released the jury from its duty to consider the weight to give the evidence and would have subjected the Commonwealth to having to prove admissibility twice. See id. at 475, 144 S.E.2d at 308.

- 11 -

The instructions proffered by Moore did not ask the jury to rule on the admissibility of Moore's statement, but they did instruct the jury that if the jury found that Moore's statement was not voluntary, then the jury was to give the statement <u>no</u> weight. As in <u>McCoy</u>, the Supreme Court has consistently ruled that once the trial judge has determined that the confession is voluntary and admissible, "the jury is entitled to hear the evidence concerning voluntariness in determining what weight the confession is due." <u>Tipton v. Commonwealth</u>, 224 Va. 256, 262, 295 S.E.2d 880, 883 (1982). Moore's instruction would have erroneously informed the jury that it had no discretion except to give the confession no weight. <u>Cf.</u> <u>McCoy</u>, 206 Va. at 475, 144 S.E.2d at 308.

"Generally, if a defendant requests an instruction that is wrong in either form or substance, the trial court has no obligation to correct the instruction and give it to the jury." <u>Kil v. Commonwealth</u>, 12 Va. App. 802, 811, 407 S.E.2d 674, 679 (1991). However, "'when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form.'" <u>Jimenez v. Commonwealth</u>, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991) (citation omitted).

We cannot conclude that the instruction was materially vital to Moore in this case. First, very little if any of Moore's counsel's argument to the jury addressed the issue of the

voluntariness of the confession.  Second, the jury was instructed that it was the judge of the credibility of the witnesses and it was to determine the weight to give the evidence.  Finally, if there was error, it clearly was harmless.  The evidence of Moore's guilt was overwhelming.  Aside from the confession at issue, Moore told two other people that he shot someone after the dance.  The detective testified that another person saw Moore and another man walk behind the victim, heard a shot, and saw Moore and the man run to a car.  In addition, Cooper identified Moore as the individual who robbed him and killed Horne.

For these reasons, we affirm the convictions.

<u>Affirmed.</u>

Willis, J., concurring.

I concur in the decision reached by the majority in this case and in its analysis under II. However, I would hold that the instructions tendered by Moore and refused by the trial court would improperly have permitted the jury to review the admissibility of Moore's confession.

The second refused instruction was in aid of the first. The first instruction permitted the jury to act, submitting to it the issue of whether Moore's statement was "freely and voluntarily" given and directing the jury, upon finding that the statement was not so given, to give the statement "no weight." This instruction would have authorized the jury to excise the statement from the evidence. By submitting to the jury this option, upon the criteria stated, the rejected instructions would have afforded the jury a right of review of the trial court's determination of admissibility.