# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Harry Edward Winstead

September 21, 2015

Case Nos. CR14-2943-00, CR14-2943-01,
CR14-2943-02, CR14-2943-03

BY JUDGE MARY JANE HALL

The matter comes before the Court on Defendant's Motion To Suppress all physical and verbal evidence obtained as a result of the arrest of Defendant on August 8, 2014, and through Defendant's written confession signed on the day of his arrest. For the reasons stated herein, the Motion To Suppress is denied.

## Background

On July 23, 2014, Investigator Nichols of the Norfolk Police Department began investigating co-defendant Christopher Manuel for selling cocaine. This investigation entailed Nichols going undercover and contacting Manuel to arrange meetings at which Manuel would sell cocaine to Nichols. Prior to the transaction that ended in the arrest of Defendant, Nichols purchased cocaine from Manuel on three separate occasions.

The first three purchases occurred on July 29, August 1, and August 6, 2014. On all three occasions, Nichols gave Manuel $175.00, Manuel took the money to a green Dodge Durango located nearby while Nichols remained in his own vehicle, and Manuel returned to Nichols's vehicle with a quantity of cocaine. At these first three purchases, Nichols visually

observed Manuel enter the green Durango and watched him return directly to Nichols's vehicle with cocaine. Nichols could only describe the driver of the Durango as a heavyset black male; he did not see his face. The Durango present at all four transactions had the same license plate number.

On August 8, 2014, Nichols and Manuel met and traveled together to a gas station on East Little Creek Road in Norfolk. As at the first three purchases, Nichols gave Manuel $175.00. Manuel then left Nichols's vehicle and entered the front passenger seat of a white van parked at the gas station with a white male sitting in the driver's seat. Shortly thereafter, Manuel exited the white van and walked out of Nichols's view. Thereafter, the same green Durango arrived; Manuel exited from the Durango, walked to Nichols' vehicle, and tossed a bag of cocaine through the window. The Durango then exited the gas station parking lot and began traveling southwest on East Little Creek Road.

Several moments after it left the gas station, several Norfolk Police Department officers stopped the Durango while it was stopped in traffic at the 100 block of East Little Creek Road. Defendant was driving the Durango, was the sole occupant of the vehicle, and matched the vague description of a "heavyset black male" whom officers had seen in the Durango at the three earlier transactions. The officers arrested Defendant at approximately 5:50 p.m. and transported him to the police station.

Approximately two hours after Defendant's arrest, a group of officers went to an apartment near the gas station at which the transaction occurred where they suspected Defendant was residing. The apartment was leased to Defendant's sister, who lived there with Defendant's nephew, Jerrell Winstead. The sequence of events that took place at the apartment is disputed, but police eventually took the nephew to the police station for questioning.

At approximately 10:00 p.m. on August 8, the officers removed Defendant from his holding cell and took him to an interview room for questioning. The officers escorting Defendant stopped him in front of the door to the holding cell in which Jerrell was confined, and Defendant briefly communicated with his nephew through the door to Jerrell's cell. During their brief exchange, Defendant did not state that he was experiencing discomfort or any mistreatment.

Defendant asserts that, at some point before the officers began to question him, one of the officers told Defendant that Jerrell would be released if Defendant "did the right thing." Defendant also claims that an officer told him "you would be surprised how many people let their family members get arrested" and remarked that the officers "should have brought your sister down too." Subsequent to these alleged statements, Defendant agreed to waive his *Miranda* rights and signed a written confession at 10:28 p.m., nearly five hours after his arrest.

This Motion raises two arguments. First, Defendant contends that his arrest was "unreasonable" under the Fourth Amendment to the United States Constitution because the police lacked probable cause to arrest him. The Commonwealth conceded at oral argument that the detention of Defendant amounted to a custodial arrest and that his detention was only justified if the officers had probable cause to arrest Defendant. Second, Defendant argues that the Court must exclude his written confession because it was involuntary. Specifically, Defendant contends that exposing Defendant to Jerrell while Jerrell was confined to a holding cell and the alleged statements made by officers implying that Glinda and Jerrell would be prosecuted if Defendant did not confess coerced Defendant into waiving his *Miranda* rights and signing the written confession, thereby rendering his confession involuntary. In the alternative, Defendant argues that, even if his confession was not involuntary, it must be excluded as a "fruit" of his unlawful arrest under the decision of the Supreme Court of the United States in *Wong Sun v. United States*, 371 U.S. 471 (1963).

## Discussion

### A. *Probable Cause To Arrest*

Defendant argues that the police did not know who was driving the Durango and whether it was the same driver for all four incidents. Counsel asserts that Defendant's only conduct, driving the Durango on August 8 – did not supply the requisite probable cause for his arrest that day. Counsel argues that police at most could have permissibly detained him for questioning but had no probable cause for arresting him.

The concept of "probable cause" under the Fourth Amendment is "a 'practical, nontechnical conception' " that involves consideration of "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). In reviewing an officer's probable cause determination, courts must "employ a 'common sense approach' not a 'hypertechnical, rigid, and legalistic analysis'." *Powell v. Commonwealth*, 57 Va. App. 329, 335, 701 S.E.2d 831, 833 (2010) (quoting *Derr v. Commonwealth*, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991)). Therefore, in determining whether the police had probable cause to arrest Defendant, the Court must adopt a common-sense approach and focus on everyday considerations and the facts known to the officers at the time of arrest.

Probable cause to arrest exists where "the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *Buhrman v.*

*Commonwealth*, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2006) (quoting *Taylor v. Commonwealth*, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981)). Moreover, "in determining whether a police officer had probable cause to arrest a defendant, a trial court must consider the totality of the facts and circumstances presented and what those facts and circumstances reasonably meant to a trained police officer." *Jones v. Commonwealth*, 279 Va. 52, 59, 688 S.E.2d 269, 273 (2010) (citations omitted). Probable cause only requires "the probability, and not a *prima facie* showing, of criminal activity." *Gates*, 462 U.S. at 235.

Importantly, "[a] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Maryland v. Pringle*, 540 U.S. 366, 372-73 (2003) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (internal citation omitted)). Indeed, the Supreme Court of the United States has held that "[w]here the standard is probable cause, a . . . seizure of a person must be supported by probable cause with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to . . . seize another or to search the premises where the person may happen to be." *Pringle*, 540 U.S. at 373 (quoting *Ybarra*, 444 U.S. at 91).

In this case, Nichols purchased cocaine from Manuel on three separation occasions prior to the transaction that resulted in Defendant's arrest. The same green Durango was present at all three transactions, and one or more persons inside the Durango apparently participated in each transaction by interacting with Manuel after Nichols had provided him with money and before Manuel gave the cocaine to Nichols. When engaging in a fourth transaction on August 8, Nichols and other officers at the scene saw Manuel exit the Durango, which had appeared at the same juncture of the transaction. In the context of the three earlier transactions, Nichols could reasonably infer that Manuel had approached the Durango before returning with the cocaine, consistent with the clear sequence of events observed at the earlier purchases. Defendant was the sole occupant of the Durango.

Defendant argues that the quoted language from *Pringle* and *Ybarra* is dispositive on the question of probable cause. He claims that the officers' suspicion of Defendant stems solely from Defendant's proximity to Manuel at the August 8 drug transaction as driver of the green Durango, and notes that the officers had not seen him handle any narcotics and did not know whether he had been present at the three prior drug transactions between Manuel and Nichols. Therefore, Defendant concludes, the officers had no individualized suspicion of Defendant, and thus no probable cause to arrest him.

The Court does not agree that the holdings of *Pringle* and *Ybarra* mandate the conclusion that police had insufficient probable cause to arrest Defendant. In *Maryland v. Pringle*, 540 U.S. 366 (2003), police officers

found cocaine in a car that was occupied by three individuals. *Id.* at 372. When none of the occupants provided any information regarding the cocaine, police arrested all three of them. The defendant, a passenger in the car, argued that the officers did not have probable cause to arrest him under the Court's holding in *Ybarra v. Illinois*, 444 U.S. 85 (1979), because the officers' suspicion of the defendant stemmed solely from his proximity to the vehicle in which the police had found narcotics. *Id.* at 372-73. The Court rejected the Defendant's contention and held that the officers had probable cause to arrest the defendant. *Id.* at 373. The Court distinguished *Ybarra* by noting that, unlike *Ybarra*, where the defendant was searched by police solely because he was a patron in a tavern where the officers were executing a search warrant, the defendant "and his two companions were in a relatively small automobile." *Id.*

Although the holding in *Pringle* is not directly on point in this case, the Court's analysis regarding probable cause to arrest a previously-unknown occupant of a vehicle is applicable. As in *Pringle*, Defendant was arrested in an automobile, rather than in a large facility open to the public like the defendant in *Ybarra*. Whereas the officers in *Pringle* had found narcotics in the car and could conclude that a passenger was "engaged in a common enterprise with the driver," the officers here could similarly infer that any occupant of the Durango when it appeared at a designated meeting spot with Manuel after Nichols expressed interest in purchasing cocaine was "engaged in a common enterprise" with Manuel to sell cocaine to Nichols. Given that Defendant was the only occupant of the Durango, the officers could reasonably infer that he had participated in the recently-completed sale of cocaine to Nichols, just as the officers in *Pringle* could infer that a passenger in a car that contained cocaine was involved in the driver's criminal scheme.

Judicial inquiry into the existence of probable cause must focus upon the facts within the officers' knowledge at the time of the arrest and the "practical considerations of everyday life on which reasonable and prudent men act." *Gates*, 462 U.S. at 231. In this case, the arresting officers had knowledge of the central role played by occupants of the Durango in the prior three purchases, the Durango's reappearance at the August 8 transaction, and the fact that Defendant was the sole occupant of the Durango when it was stopped shortly after the purchase. These facts were "sufficient to warrant a person of reasonable caution to believe that" Defendant had committed a criminal offense by facilitating Manuel's sale of cocaine to Investigator Nichols. *Buhrman*, 275 Va. at 505. Accordingly, the Court holds that there was probable cause to arrest Defendant.

## B. *Voluntariness*

Second, Defendant argues that his written confession must be excluded because he did not give it freely and voluntarily. Specifically, Defendant

asserts that the interrogating officers coerced Defendant into signing the confession by (1) forcing Defendant to observe his nephew confined in a holding cell, (2) implying that they would release the nephew if Defendant confessed, and (3) commenting about Defendant's sister that they "should have brought her in" to the station. Defendant claims that, as a result of this conduct, his will was overborne and he felt coerced into signing the confession.

A defendant's involuntary statement is not admissible at trial in a criminal prosecution of that defendant, and the admission of such a statement constitutes a violation of the defendant's right to due process. *See, e.g., Mincey v. Arizona*, 437 U.S. 385, 398 (1978). A statement is "voluntary," and thus admissible at trial in a criminal prosecution, if the statement is "the product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Conversely, a statement is involuntary, and cannot be introduced against its maker at trial, if the maker's "will [was] overborne and his capacity for self-determination critically impaired" by coercive conduct or statements by government officers. *Id.* (citing *Rogers v. Richmond*, 365 U.S. 534 (1961)).

To ascertain whether a defendant's "will was overborne," courts consider "the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Factors include (1) the defendant's age or youth, (2) the defendant's lack of education or low intelligence, (3) whether the defendant is informed of his constitutional rights, (5) the length of the detention, (6) "the repeated and prolonged nature of the questioning", and (7) "the use of physical punishment such as the deprivation of food or sleep." *Id.* (internal citations omitted).

Here, Defendant claims that his confession was involuntary because the officers expressly or impliedly threatened to prosecute or mistreat his family members if he did not confess. Importantly, a confession is not necessarily involuntary simply because the police used "threats . . . or other coercive police activity." *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012) (quoting *United States v. Braxton,* 112 F.3d 777, 780 (4th Cir. 1997) (en banc)).

Virginia law recognizes that "a confession may be involuntary and hence inadmissible when induced by threats to prosecute members of the confessor's family." *Tipton v. Commonwealth*, 224 Va. 256, 262, 295 S.E.2d 880, 883 (1982). However, "a confession is not *per se* invalid merely because the confessor implicates himself in an effort to secure the best possible disposition of a charge pending against a relative or friend . . . it must also be shown that the . . . relative was improperly detained or threatened as the means whereby the confession was involuntarily extracted." *Ferguson v. Boyd*, 566 F.2d 873, 878, n. 7 (4th Cir. 1977); see also *Hill v. Commonwealth*, 52 Va. App. 313, 320, 663 S.E.2d 133, 136

(2008) (noting that "a threat to prosecute a family member" is not "a *per se* violation" of the defendant's rights under Virginia law). As with other arguments as to voluntariness, the inquiry is "whether the defendant's will was overborne at the time he confessed." *Id.* at 318, 663 S.E.2d at 135 (quoting *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)). If the defendant's "will was overborne," his or her resulting confession is inadmissible. *Id.*

Although the Supreme Court of Virginia has not yet delineated "what quantum of evidence is necessary to render a confession involuntary" on the basis of a threat to prosecute a family member, *Hill*, 52 Va. App. at 320, 663 S.E.2d at 136, the Court of Appeals has established the following factors to guide the inquiry into the cumulative coercive effect of threats to prosecute the defendant's family member on the defendant's decision to confess: (1) the defendant's intelligence, (2) the defendant's prior experience with law enforcement, (3) any evidence of drug use by the defendant on the date of questioning, (4) any evidence of mental disability or instability, (5) any evidence of "deprivation of physical comfort," (6) whether the defendant was a "person of tender years" at the time of questioning, (7) whether the officers engaged in trickery or deceit, and (8) whether officers used psychological pressure against the defendant by telling him that his family member could be prosecuted. *Hill*, 52 Va. App. at 320, 663 S.E.2d at 136.

At least two Virginia appellate decisions have addressed the coercive impact of a threat to prosecute a member of a defendant's family on that defendant's decision to confess.

In *Hammer v. Commonwealth*, 207 Va. 135, 148 S.E.2d 878 (1966), the Supreme Court of Virginia held that a threat made by the local chief of police to prosecute members of the defendant's family rendered his confession involuntary. In that case, the defendant was arrested for an attempted assault, and investigating officers found possibly stolen property in the home the defendant occupied with his parents. *Id.* at 137-39, 148 S.E.2d at 878-80. The defendant testified that the local chief of police told him that "if [he] signed the statements . . . they would not prosecute [his] mother and father and [his] wife and [his] brother on possession of stolen property." *Id.* at 147, 148 S.E.2d at 885. On the basis of this uncontradicted testimony, the Court held that the threat rendered the defendant's confession involuntary. *Id.* at 148, 148 S.E.2d at 885-86.

In *Hill v. Commonwealth*, 52 Va. App. 313, 663 S.E.2d 133 (2008), police arrested the defendant for possession of cocaine. *Id.* at 316, 663 S.E.2d at 134. Later that day, officers observed the defendant's sister acting suspiciously near her vehicle. *Id.* at 317, 663 S.E.2d at 135. After appropriate inquiry, the officers saw cocaine in the vehicle, and arrested the sister. *Id.* While both the defendant and his sister were in custody, an officer told the defendant in reference to his sister that "the more he cooperate[d] . . . the better off she would be." *Id.*

The Court of Appeals rejected the defendant's argument that the officer's implied threat to prosecute the defendant's sister rendered his subsequent confession involuntary. *Hill*, 52 Va. App. at 322-23, 663 S.E.2d at 137-38. The Court distinguished *Hammer* by emphasizing that, in *Hammer*, the defendant's parents "were not yet arrested, and the record is unclear whether the arrest would have been valid or unjustified." *Id.* at 321, 663 S.E.2d at 137. The Court of Appeals concluded that *Hammer* "addressed a threat to prosecute potentially innocent parties as an act of retribution," and did not govern threats to prosecute a family member that the police could lawfully carry out. *Id.* In sharp contrast, the defendant's sister in *Hill* "was already validly arrested pursuant to probable cause;" therefore, the officer's "intimation that [the defendant's] sister may be prosecuted was based on fact and was not an act of retribution." *Id.* at 322-23, 663 S.E.2d at 137. Because the officer's implied threat that the defendant's sister could be prosecuted if he did not confess was grounded in fact and was not an empty threat, the Court held that the threat did not render the defendant's confession involuntary despite the fact that the defendant "may have felt a genuine concern for his sister and the circumstances may have presented a difficult choice for" him. *Id.* at 323, 663 S.E.2d at 137-38.

In the case at bar, Defendant claims that officers coerced him into confessing by (1) detaining his nephew Jerrell, (2) having Defendant observe Jerrell confined in a holding cell, (3) telling Defendant "if you do the right thing, Jerrell will get to go home," (4) stating to Defendant "you would be surprised how many people let their family members get arrested," and (5) remarking that the police "should have brought your sister down, too." Defendant argues that these statements constitute implied threats to prosecute Defendant's family members if he did not confess, thereby rendering his subsequent written confession involuntary.

Because both *Hammer* and *Hill* involved threats made by officers to investigate or prosecute an arrestee's family member, these decisions govern the Court's analysis. These cases stand for the general proposition that a confession is not rendered involuntary by an officer's statement implying that the police would investigate or prosecute a member of the defendant's family if that threat could be lawfully carried out and is not accompanied by baseless threats or other deprivations that could overcome the defendant's will.

The facts here closely parallel the situations in *Vogt v. United States*, 156 F.2d 308 (5th Cir. 1946), and *Hammer v. Commonwealth*, 207 Va. 135, 148 S.E.2d 878 (1966). In *Vogt*, the Court held that an officer's remark that " '[w]e are going to pick up your wife and bring her down to the jail and question her, too' . . . standing alone, is not such a threat as would render the accused husband's statement involuntary." *Vogt*, 156 F.2d at 312. In *Hammer*, the Court held that a threat to prosecute the defendant's family members made by the chief of police rendered the defendant's confession

involuntary because there were no lawful grounds for the threatened action and the defendant's testimony was uncontradicted. *Hammer,* 207 Va. at 147, 148 S.E.2d at 885. Here, as in those cases, an officer allegedly threatened to arrest a member of Defendant's family if he did not confess to the crime at issue. Those decisions establish that, absent additional threats or deprivations, such a threat is not coercive if the officers could lawfully carry out that threat.

Importantly, the facts of this case are distinguishable from *Hammer.* In that case, the defendant's testimony on the threat was not contradicted at trial, and the threat to prosecute members of the defendant's family constituted "a threat to prosecute potentially innocent parties as an act of retribution." *Hill,* 52 Va. App. at 321, 663 S.E.2d at 137. Neither of these conditions is present here. First, several officers who questioned or interacted with Defendant at the police station on August 8 contradicted Defendant's allegation by testifying at the hearing that they had no memory of making the statements alleged by Defendant. Second, the officers likely could have carried out their alleged threats. The officers had grounds to at least detain the nephew and the sister for questioning, because police had found contraband in their apartment. *See, e.g., Michigan v. Summers,* 452 U.S. 692, 695, n. 3 (1981) (suggesting that locating contraband in a home creates probable cause to arrest the homeowner); *United States v. Afaneh,* No. 93-3900, 1994 U.S. App. LEXIS 17337 at *14 (6th Cir. July 12, 1994) (same); *United States v. McShane,* 462 F.2d at 7 (9th Cir. 1932) (concluding that, where the defendant's girlfriend rented the apartment where officers recovered illegal firearms, the officers had "valid grounds to detain" the girlfriend because the officers, "[a]t the very least, had the right to question her as a material witness").

On balance, in view of the circumstances of Defendant's detention and questioning, Defendant's individual characteristics, and the fact that the police could have carried out their alleged threats, the Court holds that Defendant's confession was not involuntary. Under the eight-factor analysis adopted by the Court of Appeals in *Hill,* the circumstances involved here were not sufficiently coercive so as to render his confession involuntary. The Commonwealth's evidence shows that Defendant's decision to sign the written confession was "the product of a rational intellect and a free will" and that Defendant's free will was not "overborne" by the police. Accordingly, the Court concludes that Defendant's written confession was not involuntary and that this confession is admissible against Defendant.

The Court also rejects Defendant's argument that his confession should be found inadmissible as the "fruit" of an earlier Fourth Amendment violation. The Court has found that Defendant's arrest was lawful and made pursuant to probable cause. Therefore, the confession is not connected to any "poisonous tree" and is not excludable on that basis.

*Conclusion*

The Court finds that there was probable cause to arrest Defendant on the night of August 8, 2014, and that Defendant's confession was not involuntary. The Court further holds that Defendant's confession is not inadmissible as the "fruit" of any earlier Fourth Amendment violation. Accordingly, Defendant's Motion To Suppress is denied.